## STATE OF CONNECTICUT *v.* ADAM BENEDICT
(AC 32484)

Robinson, Sheldon and Schaller, Js.

Argued January 3—officially released June 5, 2012

*William F. Gallagher*, with whom, on the brief, was *William J. Ward*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Adam Benedict, appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (6).[1] On appeal, the defendant claims that the trial court erred in sustaining the prosecutor's objection to defense counsel's questioning of the complainant concerning the special conditions of her pretrial diversionary program on a pending felony charge, in violation of his constitutional right to confront the witnesses against him under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[2] We agree and, accordingly, reverse the judgment of the trial court.

The jury was presented with evidence tending to establish the following facts in support of the charge on which the defendant was convicted. At all relevant times, the complainant was a seventeen year old senior at Litchfield High School, and the defendant was a substitute teacher and athletic coach at that school. The defendant first contacted the complainant outside of

[1] The defendant was acquitted of two additional counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (6).

[2] The defendant also claims that the court erred in denying his challenge for cause with respect to a venireperson in violation of his state and federal constitutional right to a fair trial by an impartial jury, and in denying his request for a continuance to permit him to raise a challenge to the jury array, also in violation of his state and federal constitutional right to a fair trial by an impartial jury. Because we reverse the judgment of conviction on the defendant's confrontation clause claim, we need not reach these claims.

school in January or February, 2007. A week or two later, the defendant called the complainant while she was visiting a friend's residence and offered to pick her up. The complainant agreed. When the defendant and his friend arrived at the complainant's friend's residence, the defendant appeared to be intoxicated. After the defendant's friend drove the defendant and the complainant to the defendant's residence, the friend departed. Upon entering the defendant's residence, the complainant followed him into his bedroom, where he kissed her, took off her shirt, kissed her chest and sucked on her breasts. Then the defendant, still clothed, rubbed his genital region against the complainant's leg and requested that she allow him to ejaculate on her breasts or face. Thereafter, the defendant exposed his penis and requested that the complainant perform fellatio on him. When the complainant refused, the defendant returned his penis to his pants and continued rubbing his genital region against her leg until he ejaculated. After changing his clothing, the defendant lay down on the bed with the complainant, kissed her, squeezed her breasts and fell asleep. The complainant remained at the defendant's residence until the following morning.

After her graduation from high school, in June or July, 2007, the complainant, accompanied by her boyfriend and another female complainant,[3] went to the state police barracks in Litchfield to file a complaint against the defendant. On the basis of that complaint, the defendant was later arrested and charged with three counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (6).[4] Two counts related to separate

[3] The jury found the defendant not guilty of the charge relating to this complainant.

[4] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when . . . (6) such person is a school employee and subjects another person to sexual contact who is a student enrolled in a school in which the actor works or a school under the jurisdiction of the local or regional board of education which employs the actor . . . ."

alleged incidents involving sexual contact between the defendant and the complainant, and one count related to a third alleged incident involving sexual contact between the defendant and the other female complainant. After a jury trial, the defendant was convicted, on the basis of the previously described evidence, of one count of sexual assault in the fourth degree against the complainant in violation of § 53a-73a (a) (6). He later was sentenced on that charge to a term of one year incarceration, execution suspended after ninety days, and three years of probation with special conditions.[5] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly restricted his cross-examination of the complainant by sustaining the prosecutor's objection to defense counsel's questioning of her regarding the conditions of her pretrial diversionary program[6] on a pending charge of possession of narcotics in violation of General Statutes § 21a-279. The defendant claims that the court thereby violated his right to confront a crucial witness against him in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. We agree that the court violated his rights under the United States constitution.[7]

---

[5] The present appeal concerns the defendant's second trial on these charges. The defendant's first trial ended in a mistrial due to a deadlocked jury.

[6] Although the prosecutor generically referred to the program as a "pretrial diversionary program," the complainant indicated that she had to report to a "probation officer," who monitored her compliance with program conditions. As such, we will occasionally refer to her program, as did the court and counsel at trial, as her probation.

[7] Although the defendant has cited, as bases for his claim, both the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for separate treatment of them. We, therefore, see no reason to undertake such an analysis. See *State* v. *Braxton,*

During his cross-examination of the complainant, defense counsel asked her, "You have a felony pending in this court, do you not?" The prosecutor objected to this question. The court and the parties' counsel then engaged in an extensive colloquy outside the presence of the jury, in which defense counsel cited legal authority establishing the constitutional basis for his right to question the complainant regarding her pending felony charge.[8] Under such authority, defense counsel argued that questioning the complainant about her pending charge was essential to the defendant's right to present a defense because such evidence had the undeniable potential to undermine her credibility by demonstrating her motive or interest to testify favorably for the state.[9]

196 Conn. 685, 688 n.2, 495 A.2d 273 (1985); *State* v. *Cosby*, 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

[8] Defense counsel's recitation of the controlling authority was as follows: "Although an arrest is an admissible attack, a witness's credibility, it may be used to show bias, interest, or motive. That is [*State* v. *Moynahan*, 164 Conn. 560, 600, 325 A.2d 199, cert. denied, 414 U.S. 976, 945 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]. And I quote, 'It is well settled that the fact that a witness is a defendant in a criminal case creates an interest with which affects his credibility.' [The complainant] is a witness who is a defendant in a criminal case in this very courthouse, and I cite for the proposition *State* v. *Ortiz*, 198 Conn. 220 [560 A.2d 400 (1985)]; *State* v. *George*, 194 Conn. 361 [481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985)]; *State* v. *Lubesky*, 195 Conn. 475 [488 A.2d 1239 (1985)] [and] *State* v. *Shipman*, 195 Conn. 160 [486 A.2d 1130 (1985)]. It does create an interest which affects credibility. She has a pending felony in this courtroom. That's all I asked."

[9] Defense counsel and the court engaged in the following colloquy:

"[Defense Counsel]: And, Your Honor, it is well settled, and this is the basis for it. It is a well settled fact . . . that the witness is a defendant in a criminal prosecution, it creates the interest itself, which affects credibility. In other words, because she subsequently got arrested, she may be using this proceeding as leverage to get some sort of deal in that proceeding. It was a felony drug charge that carries up to seven or ten years in prison. I can't recall which. It's a big case. So of course she has to come back here and make this work for the prosecution. And that's the interest that's affected. That's what *State* v. *Ortiz* stands for, that's what *State* v. *George* stands for, *State* v. *Lubesky*, and *State* v. *Shipman*. The fact that she has it creates the interest itself.

"The Court: That she wants to satisfy the state in a conviction?

The court eventually rejected this argument after an extended colloquy with counsel on the ground that the prejudicial effect of the proffered evidence was greater than its probative value.[10]

Once the complainant finished testifying, the jury was excused so that the court and counsel could discuss the state's motion in limine regarding another witness. After that discussion was over, the prosecutor redirected the court's attention to case law establishing that the use of cross-examination to elicit facts tending to show a witness' motive, interest, bias or prejudice is a matter of right and, thus, that the court, to comply with constitutional standards under the confrontation clause, must not unduly restrict it. In light of such authority, the prosecutor urged the court to reopen the complainant's testimony so that she could be cross-examined by the defense concerning her pending felony charge. When the court inquired of counsel as to the "desired parameters" of such additional questioning if it were permitted, defense counsel responded that he only wanted to ask the complainant one question: "Do you have a pending felony [charge] in this court?" The prosecutor, for his part, stated that he would like to question the complainant briefly on redirect examination on the "limited subject" of her pending felony

"[Defense Counsel]: And I was quoting there. Yes. 'It is well settled that the witness is a defendant in a criminal prosecution creates an interest which affects his credibility,' period."

[10] The prosecutor argued that the publication of the pending charge would be extremely prejudicial to the complainant because the file in her case had been sealed and she would be entitled to a dismissal of the pending charge if she successfully completed her pretrial diversionary program in that case. He argued that the probative value of the pending charge with respect to her credibility was minor because her charge postdated the charges against the defendant and she had already testified against the defendant in the first trial on these charges, which had resulted in a mistrial when the jury deadlocked. We note, however, that the complainant's arrest for the pending charge predated her testimony against the defendant in both of his trials.

charge. The court then granted the state's motion to reopen the complainant's testimony regarding her pending felony charge, and the complainant was recalled to the stand, whereupon defense counsel prompted her to admit that she did indeed have a felony charge pending against her in the trial court.

In his ensuing redirect examination of the complainant, the prosecutor questioned her at length both about the timing of her pending charge in relation to those pending against the defendant and about the processing of her pending charge to date, including her admission into the pretrial diversionary program, upon the successful completion of which her charge would be dismissed. As to the conditions of that program, about which the prosecutor expressly asked her, the complainant stated only that she was required to report to a probation officer and to perform community service. She specifically denied that the state had promised her anything in exchange for her testimony against the defendant in this case.

On his recross-examination of the complainant, defense counsel sought to correct the impression left by the prosecutor's redirect examination—that the complainant's charge would be dismissed only if she attended all visits with her probation officer and performed all assigned hours of community service—by asking her: "Are there any other conditions to your probation?" When the prosecutor objected to this question on relevancy grounds, defense counsel responded that the prosecutor had "opened the door" to this inquiry by asking the complainant on redirect examination about only certain conditions of her probation, in an apparent effort to minimize the impact of her pending charge on the jury's assessment of her credibility.[11] The

---

[11] Although "opening the door" does not warrant boundless inquiry, "[a]s a general rule . . . if a party delves into a particular subject during examination, he is said to have opened the door for further examination regarding that subject." (Internal quotation marks omitted.) *State* v. *Quint*, 97 Conn. App. 72, 89, 904 A.2d 216, cert. denied, 280 Conn. 924, 980 A.2d 1089 (2006).

court sustained the prosecutor's objection after engaging defense counsel in the following colloquy in the presence of the jury:

"The Court: It goes to whether or not she has an interest in testifying as to the outcome of any case. What her conditions are, it just leads her to an ultimate conclusion, but if a condition of her probation was to testify favorably for the state, I would allow it, but if it's not going to involve that, I'm not going to allow it.

"[Defense Counsel]: Your Honor, if I could just address very briefly?

"The Court: Yes.

"[Defense Counsel]: I didn't ask the question, he did. He said, what are you supposed to do, probation and community service, and then attempts to minimize it. I'd like to know what other conditions are posted. He opened the door, I didn't.

"The Court: Only if it relates— ·

"[Defense Counsel]: I would have never asked the question had he not opened the door.

"The Court: You can open the door, but it's still not going to be admitted, because it's not relevant to the issue as to whether or not she was promised anything for her testimony today, so I'm not going to allow it."

The court thus clearly and categorically informed the jury that any other conditions of the complainant's pretrial diversionary program would not be relevant to her interest in testifying for the state, or thus to her credibility as a witness, unless they involved a promise by the state to reward her for her testimony. ·

In the wake of this ruling, defense counsel requested the opportunity to rephrase his question in more general

terms, which the court eventually permitted after the following exchange:

"[Defense Counsel]: Well, I ask the court if I can rephrase the question without—

"The Court: Well, let me hear you rephrase it.

"[Defense Counsel]:—without her answering it.

"The Court: Go ahead, rephrase it.

"[Defense Counsel]: Are you supposed to do anything else, without telling us what it is?

"[The Prosecutor]: I'm going to object as to relevance.

"The Court: I'll allow it to that extent, without specifics, yes."

Defense counsel thereafter asked the complainant, as the court had narrowly permitted: "Are you required to do anything else, without stating exactly what it is you're required to do?" When the complainant responded in the affirmative, defense counsel ended his recross-examination.

"The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . We must therefore conduct a two-step analysis, determining first whether the cross-examination of [a witness] permitted to defense counsel comported with sixth amendment standards . . . and second whether the trial court abused its discretion in restricting the scope of that cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Castro*, 196 Conn. 421, 424–25, 493 A.2d 223 (1985).

The sixth and fourteenth amendments to the United States constitution require that, in cross-examining an

adverse witness, defense counsel must be "permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). An essential aspect of this right is the right to elicit testimony from the witness about facts and circumstances tending to show the witness' bias, motive or interest to testify against the defendant and/or in favor of the state. See *State* v. *Ortiz*, 198 Conn. 220, 224, 502 A.2d 400 (1985). Upon the elicitation of such testimony, the defendant may appropriately present argument to the trier of fact as to the potentially corrupting influence of such facts and circumstances on the witness' credibility, whether or not the witness admits that he or she in fact has been influenced by them. The question presented to the trier by the witness' denial of any such bias, motive or interest is, of course, whether the denial itself should be credited in light of the likely effect of such facts and circumstances on a person in the witness' situation. Because of the independent impact of any particular source of bias, motive or interest on the witness' credibility and the resulting reliability of his or her testimony, this court has held that "the trial court commits error if it precludes all inquiry upon a subject tending to show the bias of a witness." *State* v. *Johnson*, 21 Conn. App. 291, 294, 573 A.2d 1218 (1990); see *State* v. *Ortiz*, supra, 226; *State* v. *Ouellette*, 190 Conn. 84, 103, 459 A.2d 1005 (1983).

One subject that is universally understood to have the potential to influence a witness to testify in favor of the state is the pendency against her of a criminal charge. See *State* v. *Reed*, 56 Conn. App. 428, 438–39, 742 A.2d 1285, cert. denied, 252 Conn. 945, 747 A.2d 524 (2000). In its most extreme and obvious form, such an interest may be seen to arise from an express agreement between the witness and the prosecutor to

furnish testimony favorable to the state. See *State* v. *Camerone*, 8 Conn. App. 317, 323, 513 A.2d 718 (1986). The reason for this conclusion, particularly when the agreement to furnish favorable testimony is part of a plea agreement, is clear: in such circumstances, it reasonably can be inferred that the witness, by giving her favorable testimony, is seeking to gain a favorable disposition of her pending charge.

Even, however, without an express agreement between the witness and the state to provide testimony against the defendant in exchange for a favorable disposition of her own criminal charges, it is well understood that the mere pendency of a criminal charge against the witness may influence the witness to give testimony favorable to the state in the hope of achieving some personal benefit in the ultimate resolution of her own case. See *State* v. *Lubesky*, 195 Conn. 475, 482, 488 A.2d 1239 (1985). Aware, as she is or can fairly be presumed to be, that the prosecutor is in a unique position not only to select the charges on which she will be prosecuted but to influence the final disposition of those charges—by entering or declining to enter into a plea bargain with her or arguing for a greater or lesser sentence in her case—the logical witness may reasonably be found to believe that her own cooperation with the state in prosecuting the case on trial will at least be taken note of, and perhaps be rewarded, when her own pending charges are finally disposed of. The potentially biasing or interest producing effect of pending charges on the witness, even in the absence of any agreement by her to give inculpatory testimony, arises from the power of the state, whose interests are directly affected by the witness' testimony, to influence, if not control, the witness' own fate before the criminal court.

In the present case, when defense counsel was finally permitted to question the complainant about her pending criminal charge, he was initially content to ask her

only if such a charge was in fact pending against her. Such evidence, as previously noted, could have been used by the defense as a separate and independent basis for arguing that she might have been influenced to testify against the defendant in the hope of receiving favorable treatment from the prosecution in the ultimate disposition of her pending charge. When, however, the prosecutor questioned the complainant on redirect examination, the strength of that argument was undermined in two ways. First, the prosecutor caused the complainant to reveal for the first time that she had been given the opportunity to participate in a pretrial diversionary program, upon the successful completion of which her pending charge would be dismissed.[12] Second, the prosecutor caused the complainant to state that the conditions of her diversionary program did not include any agreement by her to give testimony against the defendant in this case. Instead, she stated that her program required her to meet with her probation officer and to perform community service. By eliciting such testimony from the complainant, the prosecutor attempted to suggest that the pendency of a felony charge against her could not have influenced her to testify in favor of the state because the prosecutor could no longer influence the final disposition of that charge.

Defense counsel, recognizing the resulting need to demonstrate the continuing potential of the complainant's pending charge to influence her testimony against the defendant notwithstanding the claimed lack of any agreement between her and the state to reward her for her testimony, immediately sought, on recross-examination, to elicit further information from her about the

---

[12] Although the prosecutor indicated that the conditions of the complainant's probation were sealed, the United States Supreme Court, in *Davis*, determined that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Davis* v. *Alaska*, supra, 415 U.S. 320.

other conditions of her probation. The existence *vel non* of any such conditions belied the suggestion implicit in the prosecutor's redirect examination that all that the complainant had to do to gain a dismissal of her pending charge was to attend all scheduled visits with her probation officer and to complete her assigned community service. The details of such conditions, more importantly, would have shed invaluable light on exactly what role the prosecutor and his associates might still have played in determining whether the complainant had successfully completed her program and earned a dismissal. If her success or failure in the program could be established by purely objective measures—such as by proving that she had made a donation in a preset amount to a particular charity—then the prosecutor's potential to undermine her chances for dismissal would have been minimal at most. If, by contrast, any extra conditions imposed on her were such as to require a subjective appraisal of her efforts, achievements and/ or changes in behavior while in the program, then the prosecutor's role as an advocate in influencing the court's determination as to her success or failure in the program would have remained substantial, giving the state the continuing power to affect her fate in her criminal case. Hence, defense counsel's inquiry as to the other conditions of the complainant's program was essential to understanding the potential impact of the pending charge on her credibility.

When defense counsel posed his question to the complainant about the other conditions of her probation and the prosecutor objected, defense counsel correctly noted that the prosecutor had opened the door to that inquiry by exposing certain of those conditions to the jury in an effort to minimize the effect of the pending charge on her credibility. The court, however, cut him off, declaring, in the presence of the jury, that unless the other conditions of her program involved an

agreement by the state to reward her for her testimony, it would not permit further inquiry about them because they would not be relevant to her credibility. In so stating, the court denied fair and reasonable inquiry into an important subject already broached by the prosecutor, and thus categorically discounted, before the jury, the potential impact of the complainant's pending charge on her interest in testifying favorably for the state.[13] Although the court did eventually permit defense counsel to ask, without details, whether the complainant had other, undisclosed conditions of probation, such testimony was rendered worthless by the court's anticipatory declaration that any such conditions would be irrelevant to her credibility if they did not involve an express agreement by her to testify in favor of the state. By so ruling, the court deprived the defendant of any meaningful opportunity to gain the benefit of an inference adverse to the complainant's credibility based on the pendency of her criminal charge.

"The United States Supreme Court has recognized that certain constitutional protections are so central to the requirement of a fair trial that their violation absolutely requires that the conviction from which they arose be set aside. . . . In some circumstances, however, violations of other, less basic constitutional rights may be considered harmless and therefore do not compel reversal." (Citation omitted.) *State* v. *Cohane*, 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). Our own Supreme Court has held that a violation "of the defendant's sixth and fourteenth amendment guarantees of confrontation, does not require an automatic reversal."

---

[13] Defense counsel did not provide an offer of proof after the court denied further inquiry into the conditions of the complainant's probation. He is not required, however, to do so to preserve a claim of infringement of the right of cross-examination. See *State* v. *Santiago*, 224 Conn. 325, 330–31 n.6, 618 A.2d 32 (1992).

*State* v. *Milner*, 206 Conn. 512, 528, 539 A.2d 80 (1988). On this issue, however, the state has the burden of proving beyond a reasonable doubt that the error was harmless. *State* v. *Cohane*, supra, 485.

"[T]he harmlessness of an error depends upon its impact on the trier and the result, not upon whether the particular evidence involved was legally essential to support the finding." *State* v. *Bruno*, 197 Conn. 326, 336, 497 A.2d 758 (1985) (*Shea, J.*, concurring), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986). "[P]revention, throughout the trial of a criminal case, of *all* inquiry in fields where cross-examination is appropriate, and particularly in circumstances where the excluded questions have a bearing on credibility and on the commission by the accused of the acts relied upon for conviction, passes the proper limits of discretion and is prejudicial error." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ouellette*, supra, 190 Conn. 103.

Applying these standards, we conclude that the state has failed to meet its burden of showing that the court's error in this case was harmless beyond a reasonable doubt. In these circumstances, the court's disallowance of further defense inquiry as to the other conditions of the complainant's pretrial diversionary program undermined the defendant's right to have the jury infer that she may have been motivated by her pending charge to testify against the defendant on the basis of her belief that, by so doing, she would garner favor with the state and gain its assistance with the ultimate disposition of her pending charge.

The state claims that the error was harmless due to the availability of corroborating evidence regarding the alleged incident of sexual contact between the defendant and the complainant. We find this claim unpersuasive, however, because the complainant was not only

the chief witness for the state, but the only witness to the defendant's alleged sexual misconduct. See *State* v. *Corley*, 177 Conn. 243, 247, 413 A.2d 826 (1979) (concluding that failure to permit inquiry into potentially favorable disposition of chief witness' pending charges in exchange for his testimony constituted violation of defendant's right under confrontation clause). As such, her testimony against the defendant was crucial, and the jury's consideration of her credibility was highly relevant to its ultimate finding of guilt. It was, therefore, essential that the defendant be accorded the right to delve into whether the complainant had any possible interest or motive for testifying against him. The ultimate measure of the complainant's potential bias, to reiterate, was not whether she had been promised favorable treatment in exchange for her testimony. Instead, it was whether she might have felt it to be in her interest to shade her testimony in favor of the state, or perhaps to maintain a baseless charge for fear of losing a substantial benefit from the state if she changed her mind and declined to testify. See *State* v. *Johnson*, supra, 21 Conn. App. 294–95 (finding error in trial court's exclusion of any inquiry as to possibility of criminal consequences for complainant if he changed his story during trial because that inquiry would have afforded jury "a basis for an inference that there was potentially undue pressure placed on [the complainant] to testify"). Because exploration of that subject, with its unique potential to raise doubt about the credibility of the complainant—a crucial witness for the state as to the occurrence of the alleged conduct on which the prosecution depended—was denied, the court cannot be found to have honored the defendant's sixth and fourteenth amendment right to confront adverse witnesses.

In addition, the state claims that any error was harmless because the complainant's initial complaint in this case predated her arrest on the pending charge. We are

not persuaded by this argument either. On the basis of the evidence presented at trial, the jury reasonably could have inferred that the complainant made her initial statement to the police under pressure from her boyfriend. The complainant testified that, after she graduated from high school and several months after the defendant's alleged sexual assault on her, she initiated contact with the defendant through text messages. After her boyfriend discovered that she was communicating with the defendant in this manner, he in turn contacted the defendant, who allegedly responded to him with threatening text messages. The complainant testified that it was only after this dispute arose and her boyfriend encouraged her to file a complaint against the defendant that she finally did so. The jury thus reasonably could have inferred that, although the pendency of the criminal charge against the complainant played no role in causing her to bring false charges against the defendant in the first place, its later pendency against her motivated her to maintain those false charges through the time of trial in order to assist the state, and thus to enhance her prospect for a favorable disposition in her own case.

For the foregoing reasons, we reject the state's claim that the trial court's erroneous restriction of cross-examination was harmless beyond a reasonable doubt. Accordingly, we conclude that the trial court's ruling constituted reversible error.

II

Because we find that the trial court erred in sustaining the state's objection to defense counsel's questioning of the complainant, we need not consider the defendant's other claims except to the extent that the issues timely raised are likely to arise again at retrial. See, e.g., *State v. Vinal*, 198 Conn. 644, 652–53, 504 A.2d 1364 (1986) (concluding that issues will be reviewed if they are

likely to arise at new trial). The only such issue concerns the trial court's ruling permitting the state to question the defendant and his character witnesses about his social media website login identification, smoothcriminal77 (login identification),[14] which the defendant claims to have been in violation of § 4-4 of the Connecticut Code of Evidence.[15] The defendant claims that, because the court had narrowed the scope of permissible character evidence to that which related to a specific element of the crime charged, to which the login identification was irrelevant, such evidence went only to general bad character and was thus inadmissible at trial. We agree that the admission of the login identification was an abuse of the court's discretion that must not be repeated if this case is retried.

The following additional facts are necessary to our resolution of the defendant's claim. During cross-examination of the defendant, defense counsel objected to the state's questioning of him regarding his MySpace login identification on the ground that it was irrelevant. The prosecutor responded: "As far as what his login ID

[14] The defendant refers to the social media website as Facebook.com. The record reflects, however, that the social media website was MySpace.com. Further, the defendant refers to his login identification as "smoothcriminal77." The record, however, reflects that the defendant's login identification was "smoothcriminal1977."

The words "smooth criminal" in the login identification reference a song by Michael Jackson, later performed by Alien Ant Farm, entitled "Smooth Criminal." The song contains lyrics describing violence against a woman. The defendant testified that the numbers "1977" in the login identification represent his birth year.

[15] Section 4-4 of the Connecticut Code of Evidence provides in relevant part: "(a) Character evidence generally. Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion, except that the following is admissible:

(1) Character of the accused. Evidence of a specific trait of character of the accused relevant to an element of the crime charged offered by an accused, or by the prosecution to rebut such evidence introduced by the accused. . . ."

was, 'smooth criminal,' if I didn't think he was going to call a bunch of character witnesses, his pastor and things like that, then, arguably, I don't know that I would offer it. But if there's going to be a bunch of character witnesses to say what a good person he is, I think it becomes relevant." In ruling on the objection, the court stated: "I'm going to sustain your objection in most part. You can put the title of the—if it's an identification . . . feature of a Facebook, I'll allow it in for that purpose. . . . I am sustaining your objection 90 percent of what the content of the song is, but it's an identifying feature on Facebook or Twitter, or whatever, I'll allow it in just for that purpose. Okay . . . ?" Defense counsel responded, "[s]o it's limited to the title of the song." The court inquired, "[o]kay?" to which defense counsel answered, "[t]hank you."

After the defendant testified, defense counsel indicated that he did indeed intend to call character witnesses to testify. The state objected to the admission of character witnesses on the ground, among others, that the admission of general character evidence was improper. The court determined, pursuant to § 4-4 of the Connecticut Code of Evidence, that the defendant's character witnesses could testify, but only as to the defendant's character trait of not having sexual contact with students. During his cross-examination of three of the defendant's character witnesses, the prosecutor referred to the defendant's login identification and inquired about whether the witnesses knew if the defendant was the type of person who would have such an identification.[16] These references constitute the basis of the defendant's claim.

---

[16] Although defense counsel did not specifically object to the state's questioning of the character witnesses on the ground that any inquiry about the defendant's login identification was outside the scope of permissible character evidence, the objection had been preserved by a previous objection. During cross-examination of the defendant, defense counsel objected to the state's questioning about his login identification. The state, in its admitted anticipation of the defendant's subsequent admission of character

"Evidence of an accused's trait of character must be relevant to an element of the crime charged." *State* v. *Martin*, 170 Conn. 161, 165, 365 A.2d 104 (1976). "When a character witness has given his opinion as to a particular trait, the state may cross-examine that witness concerning specific acts, not to prove the truth of such facts, but to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy." Id. "[W]hen the prosecutor attacks the basis of the witness' opinion by questioning him as to his knowledge of specific acts, such acts must be relevant to those traits." Id., 165–66. "The [s]tate's rebuttal evidence . . . may not include other traits or that which merely reflects on the accused's general good or bad character." C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 4.13.3, pp. 148–49. "The determination of relevance [of the acts] must be made according to reason and judicial experience. . . . That determination requires the exercise of the court's discretion." (Citation omitted.) *State* v. *Martin*, supra, 166.

The court properly narrowed the scope of permissible character evidence to the defendant's character trait of not having sexual contact with students, which tends to negate an element of the crime charged.[17] Despite the state's attempt to identify an attenuated connection between the defendant's login identification of "smoothcriminal77" and the crime that he allegedly committed, we conclude that the login identification

evidence, requested that the court permit the introduction of the defendant's login identification. Both the court and the state, therefore, were apprised that the initial objection was premised on the login identification's use as character evidence. See *State* v. *Lahai*, 128 Conn. App. 448, 467, 18 A.3d 630, cert. denied, 301 Conn. 934, 23 A.3d 727 (2011). Accordingly, we conclude that the defendant preserved his claim for appellate review.

[17] Unlawful sexual contact with a student is one of the elements of the offense with which the defendant was charged. See General Statutes § 53a-73a (a) (6).

does not specifically relate to the trait for which character evidence was permissible. Rather, the defendant's login identification can only be characterized as impermissible general bad character evidence. We conclude, therefore, that in allowing the state to question the witnesses regarding the defendant's login identification, the court abused its discretion.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.