******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ADAM BENEDICT
(SC 19549)

Rogers, C. J., and Palmer, Zarella, McDonald and Vertefeuille, Js.

*Argued September 14—officially released December 6, 2016*

*William J. Ward*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The sole issue in this certified appeal is whether the trial court deprived the defendant, Adam Benedict, of his right to a fair trial by denying his request to strike a juror for cause when the defendant had shown that the juror was a police officer with possible ties to the agency investigating the defendant's case.[1] In his second trial, the jury, including the challenged juror, found the defendant guilty of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (6), and not guilty of two additional counts under the same statute. The defendant appeals from the judgment of the Appellate Court affirming the trial court's judgment after concluding that the trial court properly had denied his challenge of the juror for cause. *State* v. *Benedict*, 158 Conn. App. 599, 620, 119 A.3d 1245 (2015). The defendant claims that the challenged juror's bias should have been conclusively presumed because the juror was a Southbury police officer who reported to a Connecticut state trooper and other Connecticut state troopers who investigated the defendant's criminal charges. We disagree and affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history which are relevant to this appeal. The victim[2] made a report to the Connecticut state police in Litchfield alleging that when she was seventeen years old and a high school senior, the defendant, a substitute teacher and coach at her high school, invited her to his residence and, after she arrived, engaged in sexual conduct with her. Samantha McCord, a Connecticut state trooper assigned to Troop L in Litchfield, investigated the complaint.

The defendant was tried before a jury in January, 2010, on an amended information charging him with three counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (6), and one count of harassment in violation of General Statutes § 53a-183. McCord was a key witness for the state. The jury acquitted the defendant of harassment, but could not reach a verdict on the sexual assault counts. Consequently, the trial court declared a mistrial on those counts, and the case was rescheduled for a second jury trial.

During the first day of jury selection for the second trial, the defendant exhausted his peremptory challenges. Later that day, a venireperson, identified as J.J.,[3] was individually questioned. As an initial inquiry, the trial court asked what J.J. did for work, and he responded that he was a police officer for the town of Southbury. J.J. later stated that "in Southbury, my boss . . . is a state police sergeant," and also that he "work[ed] under the state police." When questioned whether he knew any of the specific state troopers who were going to testify at the defendant's trial, J.J. stated

that he did not know any of the names that defense counsel had provided to him.

Upon questioning by the trial court and the parties, J.J. stated that he would not consider a witness more credible because of his or her role as a police officer, and he agreed that "[j]ust because somebody's a police officer and comes in here and testifies, that [does not] mean that [they are] telling the truth . . . ." He also stated that the defendant would not be "sitting at any disadvantage at all" due to the fact that J.J. worked under the state police and it was the state police that had arrested the defendant.

The defendant challenged J.J. for cause on the ground that J.J. "works for the very people who are going to be testifying." The state disagreed that J.J. worked for the investigating agency, instead describing the Southbury police as "a police department unto themselves with the exception [being] they have a sergeant from the state police who is on loan to them . . . ." The state noted that J.J.'s employer was the town of Southbury. Furthermore, according to the state, the trooper assigned to Southbury "doesn't even work for Troop L. That's a different troop. That's a Southbury troop. That's not even Troop L." In response to the defendant's challenge to J.J. for cause, the trial court seemed to address both actual and implied bias challenges for cause, stating that "[u]nless you have a case which tells me that a police officer is per se ineligible to serve on a jury in a criminal case, I have found nothing in the answers from this juror that would indicate that he couldn't be a fair and impartial juror." The court then denied the defendant's challenge for cause, observing that J.J. "does not know any of the officers involved in the case, not even remotely."

The next morning, before continuing with voir dire, the defendant renewed his challenge to J.J. for cause, specifically claiming implied bias due to an "on-going employment relationship with a prosecutorial arm of the case . . . ." In advocating for J.J. to be removed due to implied bias, defense counsel alleged that "[J.J.] essentially works under the department that arrested [the defendant]. He's testified to that. He works for the state trooper down there in Southbury. Also, Trooper McCord said that she'd been transferred. The likelihood [of] [J.J.] running into Trooper McCord or one of the other officers during the course of his career is very likely. He works with the prosecutorial arm." In response, the state asserted that J.J. was "not employed by the Connecticut Division of Criminal Justice. He's not even employed by the state police. He's employed by the town of Southbury. So, it's a totally different situation."

The trial court responded to the defendant's renewed challenge to remove J.J. for cause as follows: "I had a juror here who happened to be a police officer, a

prospective juror, who answered the questions to the court's satisfaction that he would be fair and impartial. He had the educational background. [J.J.] was on the force for about four years. He's a relatively new police officer. My recollection of his testimony was he does not do any type of investigations regarding sexual assault cases. And I think another issue that would probably be raised in future proceeding[s], is the nature of this trial. I mean, I believe the trial will boil down to the credibility of two witnesses against [the defendant]. And I know that from the last trial that there was [an] investigation done by an officer and she was one of the key witnesses; I will give you that much, that she was a key witness involved in the investigation. [J.J.] doesn't know that person and I could not—to start speculating as to whether or not he would be embarrassed to go back to his police department because of something that he heard at this trial regarding the testimony of an investigating officer, is so speculative and so tenuous, I'd—I would have to—if I removed him [for] cause it would basically be because per se, he was a police officer. And I am not going to do that. So, I am not going to excuse him for cause. So, your renewed challenge to remove [J.J.] for cause is denied."

The second jury trial was conducted in April, 2010. After two days of deliberation, the jury, which included J.J., found the defendant guilty of one count of sexual assault in the fourth degree and not guilty of the remaining two counts. Subsequently, the trial court sentenced the defendant to one year of incarceration, execution suspended after ninety days, followed by three years of probation with special conditions.

The defendant appealed to the Appellate Court, raising four claims, including that the trial court had violated his state and federal constitutional rights to a fair trial by denying his challenge to J.J. for cause. *State* v. *Benedict*, 136 Conn. App. 36, 38 and n.2, 43 A.3d 772 (2012). Because the Appellate Court held that a separate confrontation clause claim was dispositive of the defendant's appeal, it reversed his conviction and remanded the case for a new trial without addressing his other claims. Id. Thereafter, this court reversed the Appellate Court's judgment, holding that there had been no confrontation clause violation, and remanded the case to the Appellate Court to decide the defendant's remaining claims. *State* v. *Benedict*, 313 Conn. 494, 515–16, 98 A.3d 42 (2014). On remand, the Appellate Court held that the defendant had failed to meet his burden of proving a master-servant relationship between the state police and the officers of the Southbury Police Department and, therefore, that the trial court had not abused its discretion in denying the defendant's juror challenge for cause with respect to J.J.[4] *State* v. *Benedict*, supra, 158 Conn. App. 611. This appeal followed.

The defendant asserts that the trial court should have

removed J.J. for cause based on a principal challenge, where implied bias is conclusively presumed and disqualification is required as a matter of law, because he was a police officer with a close employment relationship with the state police who had investigated the criminal case. The defendant concedes that mere employment as a police officer is not sufficient to require that a juror be removed for cause, but contends that such employment plus some additional factor may require removal. According to the defendant, J.J. satisfied that test because he was a Southbury police officer whose supervisor was a trooper with the Connecticut state police, which was the law enforcement agency that had investigated the criminal case. Accordingly, the defendant contends that J.J. had a prohibitively close employment relationship with the investigating agency.

The state responds that a master-servant relationship between a juror and an investigating agency, as opposed to a prosecuting agency, does not meet the criteria for a principal challenge. In the state's view, principal challenges based on a master-servant relationship are limited to relationships between a juror and a party, and, while a prosecuting authority is a party to a criminal case, an investigating agency is not. The state further claims that, even if this court were to hold that a police officer employed by the investigating agency should be removed for implied bias, the defendant failed to meet his burden of establishing such a relationship during voir dire. The state points to the fact that the record strongly suggested that J.J. was employed by the town of Southbury and not directly by the state police. The state contends further that the investigating troop covers a geographic region of the state that does not include Southbury, and that J.J. did not personally know any of the troopers named on the witness list. Although we disagree with the state that a juror's employment with an investigating agency can never be grounds for dismissal due to implied bias, we nevertheless agree that the defendant in this case failed to establish the factual basis necessary to compel the trial court to grant his principal challenge to J.J. Specifically, the defendant did not show that J. J. was employed by the state police.

We first set forth the applicable standard of review and general principles. While a trial court is generally accorded deference in making determinations of a juror's competency to serve; *State* v. *Esposito*, 223 Conn. 299, 310, 613 A.2d 242 (1992); once a defendant establishes the existence of a prohibited relationship under a principal challenge, removal of the challenged juror is required as a matter of law. *Morgan* v. *St. Francis Hospital & Medical Center*, 216 Conn. 621, 624, 583 A.2d 630 (1990).

"As a preliminary matter, we note the settled principle that '[j]ury impartiality is a core requirement of the

right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court.' . . . *State* v. *Brown*, [235 Conn. 502, 522–23, 668 A.2d 1288 (1995)]." *State* v. *Johnson*, 288 Conn. 236, 248, 951 A.2d 1257 (2008).

" 'In Connecticut, the disqualification of a juror may be based upon the General Statutes or upon the rules of the common law.' *Johnson* v. *New Britain General Hospital*, 203 Conn. 570, 580, 525 A.2d 1319 (1987); *McCarten* v. *Connecticut Co.*, 103 Conn. 537, 542, 131 A. 505 (1925); see General Statutes § 51-217 (c) (1)." *Morgan* v. *St. Francis Hospital & Medical Center*, supra, 216 Conn. 623. In the present case, the defendant does not raise a claim under § 51-217 (c) (1), but relies solely on the common law.

"At common law, challenges to the suitability of a juror may be either peremptory (without a stated basis) or for cause (for an articulated reason)." Id., 624. " '[A] challenge [for cause] to an individual juror for bias or prejudice can be either a principal challenge or a challenge to the favor. *McCarten* v. *Connecticut Co.*, [supra, 103 Conn. 542]. A principal challenge may arise when the connection between the prospective juror and either party is of so close a nature that, when the facts concerning the relationship or interest are proven or when the prospective juror "has formed or expressed an opinion on the question at issue," the disqualification is conclusively presumed. Id.; see, e.g., *State* v. *Kokoszka*, 123 Conn. 161, 164, 193 A. 210 (1937). A challenge to the favor, on the other hand, is one where the connection, being more remote, tends to show bias but does not create a conclusive presumption of bias. *McCarten* v. *Connecticut Co.*, supra, 542–43.' *Johnson* v. *New Britain General Hospital*, [supra, 203 Conn. 581–82]." *State* v. *Esposito*, supra, 223 Conn. 309.

"The reason for disqualifying a whole class [of jurors] on the ground of bias is the law's recognition that if the circumstances of that class in the run of instances are likely to generate bias, consciously or unconsciously, it would be a hopeless endeavor to search out the impact of these circumstances on the mind and judgment of a particular individual. That is the reason why the influences of consanguinity or of financial interest are not individually canvassed." *Dennis* v. *United States*, 339 U.S. 162, 181, 70 S. Ct. 519, 94 L. Ed. 734 (1950) (Frankfurter, J., dissenting); see id., 171–72 (majority holding that mere fact of juror's government employment not ground for principal challenge).

This court has sought to avoid creating "a set of unreasonably constricting presumptions that jurors be excused for cause"; *State* v. *Clark*, 164 Conn. 224, 228, 319 A.2d 398 (1973); since a defendant's right to an impartial jury is also protected through a showing of actual bias or prejudice. We previously have indicated that, in Connecticut, the "[g]rounds for a principal challenge include, 'relationship to either party to the suit, a former service as arbitrator on either side, an interest in the outcome of the suit, either personal or as a member of a corporation, or *the relation of master or servant*, steward, attorney, landlord or tenant *to either party*, or that the prospective juror has conversed with either party upon the merits of the case, or has formed or expressed an opinion on the question at issue.' *McCarten* v. *Connecticut Co.*, [supra, 103 Conn. 542]." (Emphasis added.) *State* v. *Esposito*, supra, 223 Conn. 309–10 n.7. "These relationships are 'held to import absolute bias or favor and require the disqualification of the juror as a matter of law.' *State* v. *Kokoszka*, supra, 123 Conn. 164." *Morgan* v. *St. Francis Hospital & Medical Center*, supra, 216 Conn. 624. Once the factual basis for the principal challenge has been proven by a party, the disqualification is conclusively presumed. See *McCarten* v. *Connecticut Co.*, supra, 542.

"Connecticut has no common-law rule or statute prohibiting or exempting an active police officer from service on a jury solely because of his occupation . . . . See General Statutes [Rev. to 1972] § 51-219. We find ourselves in agreement with the holding of the Circuit Court of Appeals for the Second Circuit which . . . stated in *Mikus* v. *United States*, 433 F.2d 719, 724 [(2d Cir. 1970)] . . . '[t]he mere fact of membership on a police force is not presumptively a disqualification for service on a jury in a criminal case.' " *State* v. *Clark*, supra, 164 Conn. 227. This rule is in accord with other jurisdictions. See *United States* v. *Alexander*, Docket No. 94-5154, 1995 WL 631813, *1 (10th Cir. October 27, 1995) (decision without published opinion, 69 F.3d 548 [1995]) (police officer); *United States* v. *McIntyre*, 997 F.2d 687, 697–98 (10th Cir. 1993) (former police officer); *United States* v. *Mitchell*, 556 F.2d 371, 378–79 (6th Cir. 1977) (former police officer who knew witness); *State* v. *Foster*, 150 La. 971, 985, 91 So. 411 (1922) (deputy sheriff); *State* v. *Carter*, 106 La. 407, 408, 30 So. 895 (1901) (constable); *State* v. *Edwards*, 716 S.W.2d 484, 487–88 (Mo. App. 1986) (city police reserve officer, no connection to county police department investigating crime); *State* v. *Cosgrove*, 16 R.I. 411, 412, 16 A. 900 (1889) (constable); *Burns* v. *State*, 12 Tex. App. 269, 278 (1882) (deputy sheriff); *State* v. *Parker*, 104 Vt. 494, 497–98, 162 A. 696 (1932) (deputy sheriff).

Contrary to the state's argument, however, reviewing courts have at times approved the removal of police officers or other law enforcement officials from juries,

for cause, when certain other circumstances are present. This is the case even though the police, an investigating agency, are not truly a party to the criminal matter. In these instances, the prospective juror who worked in law enforcement typically had a close relationship with one or more of the police witnesses who would be testifying in the case. See *State* v. *Petty*, 610 S.W.2d 126, 127 (Mo. App. 1980) (juror was former police officer who knew police witnesses). In particular, where the prospective juror works in law enforcement and falls under the chain of command of a key witness, courts have reasoned that the risk of bias is too great and removed the juror under a principal challenge. See *Tate* v. *People*, 125 Colo. 527, 538–40, 247 P.2d 665 (1952) (juror was special deputy sheriff who reported to prosecuting witness); *State* v. *Butts*, 349 Mo. 213, 219–20, 159 S.W.2d 790 (1942) (juror was police officer, fellow officers and chief of police were key witnesses). In all of these cases, the juror's relationship to a witness was of so close a nature that it was likely to produce, consciously or unconsciously, bias on the part of the juror. In light of these authorities, which we find persuasive, we are not willing to adopt a categorical rule that principal challenges are limited to those cases in which a prospective juror has a prohibited relationship with a party to the case, rather than a witness.

We reaffirm today that a potential juror's employment as a police officer, standing alone, is not a ground to remove that juror under a principal challenge. We clarify, however, that if a defendant establishes that under the circumstances of a particular case, the specific relationship between the challenged juror and the investigating authority is of so close a nature that it is likely to produce, consciously or unconsciously, bias on the part of the juror, then the court should grant the defendant's motion to remove that juror under a principal challenge.[5] When reviewing a trial court's ruling on a principal challenge on appeal, we will look to the facts as established by the party asserting the challenge during voir dire to determine whether a prohibited relationship, likely to impart bias, exists.

In the present case, the defendant elicited the following facts during voir dire. J.J. was employed as a police officer in the town of Southbury. Although J.J. stated that his "boss" was a Connecticut state police sergeant, and that he "work[ed] under the state police," the defendant did not question him further to establish the specifics of that relationship, such as who directed J.J.'s day-to-day work or evaluated his performance. The defendant did not elicit from J.J. any information concerning the precise nature of the relationship between the Southbury police and the Connecticut state police. It is unclear from the record, for example, whether the state police sergeant who J.J. considered his "boss" received day-to-day supervision from the state police, or rather, from the town of Southbury. Moreover, the

defendant did not elicit any statement from J.J. or present any other evidence that the Southbury police fell under the chain of command of the state police troop in Litchfield who investigated this case. Importantly, J.J. confirmed that he did not personally know any of the state troopers named on the witness list. There also was no information elicited from J.J. that indicated whether J.J. worked directly with any state troopers other than the sergeant assigned to Southbury. On the basis of the foregoing, we cannot conclude that the defendant met his burden of showing that J.J. had a direct relationship with the investigating agency or any state troopers who were involved in the investigation, much less a close relationship. As a result, the defendant did not meet his burden of establishing a close relationship between J.J. and a party or witness that would require his removal for cause.

In sum, because there was an insufficient factual basis for the trial court to find the type of close relationship between J.J. and a party or witness that would require disqualification as a matter of law, we conclude that the trial court properly denied the defendant's principal challenge with respect to J.J.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the trial court deprive the defendant of a fair trial by refusing to strike a prospective juror for cause when the juror was a police officer whose supervisor was a member of the same department that investigated the defendant's criminal case?" *State* v. *Benedict*, 319 Conn. 924, 125 A.3d 200 (2015). Because the Appellate Court concluded that the defendant did not meet his burden to prove that the juror's supervisor was a member of the investigating police department, the issue before this court, more accurately rephrased, is whether the Appellate Court properly concluded that the trial court did not deprive the defendant of his right to a fair trial by denying his request to strike a juror for cause when the defendant had shown that the juror was a police officer with possible ties to the agency investigating the defendant's case. See *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010) (court may reframe certified question to more accurately reflect issue).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom her identity may be ascertained. General Statutes § 54-86e.

[3] To protect the privacy interests of the venireperson, we refer to him by his first and last initials. *State* v. *Gonzalez*, 315 Conn. 564, 569 n.3, 109 A.3d 453 (2015).

[4] The Appellate Court also rejected the defendant's claims that the trial court improperly had denied his request for a continuance and had admitted certain evidence. See *State* v. *Benedict*, supra, 158 Conn. App. 615, 620. These claims are not part of the present appeal.

[5] While not categorically barring all police officers who work for the agency that investigated the criminal case, we agree that "a law enforcement agency employee with a close working relationship with testifying officers from the same agency has at least the same risk of inherent prejudice as has an employee of the prosecuting agency. In fact, because of the closer proximity to criminal activity and the often dangerous nature of the work done by agencies like the police department here, employees of such agencies may more likely be seen as impliedly biased against criminal defendants than are employees of a prosecuting agency." *United States* v. *Mitchell*, 690 F.3d 137, 151 (3d Cir. 2012) (Jordan, J., concurring in part and dissenting in part).