STATE OF CONNECTICUT *v.* TERRANCE WILSON
(No. 10891)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY, and GRILLO, Js.

Argued November 4—decision released December 28, 1982

*Gerard A. Smyth,* assistant public defender, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom were *Richard A. Schatz,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, and *Jorge A. Simon,* special deputy assistant state's attorney, for the appellee (state).

PARSKEY, J. In a trial to the jury the defendant was found guilty of the crimes of burglary in the second degree, and larceny in the first degree in violation of General Statutes §§ 53a-102 and 53a-122(a) (2) respectively. In his appeal the defendant claims he was denied his constitutional right to cross-examine a key witness in certain respects. He also claims that the court erred in permitting a jeweler to give his opinion with respect to the value of several items of the stolen property.

The evidence presented at trial showed that during the period of time commencing on March 5, 1979, between the hours of 3 and 4 p.m., and ending on March 6, 1979, between the hours of 2 and 3 p.m., the home of Mr. and Mrs. Peter Bossi, located at 1246 Burlington Avenue, Bristol, was forcibly entered and jewelry was stolen. At the time, Mr. and Mrs. Bossi were on vacation in Florida. Upon returning to their home, they were informed of the break-in and discovered their loss. Subsequently, Mr. Bossi and his wife prepared an inventory of those items which had been stolen. The items which belonged to Mr. Bossi were a gold Hamilton watch, a tiger eye ring with small diamond chips, a gold chain with horn, and an inexpensive watch. The other items on the list belonged to Mrs. Bossi. Mr. Bossi testified that he was not familiar with all of the items which belonged to his wife.

Mrs. Bossi testified that she was missing her mother's engagement ring and wedding band, a gold chain, a gold-link bracelet, a pearl stone ring, a silver dollar on a chain, a half dozen bracelets, four or five rings, four or five gold chains, coins, and an award watch from the New Departure Company, all of which were listed on the inventory. A pillowcase from one of the pillows in the bedroom was also missing.

Joseph J. Gerulis, a coaccused, testified that on an evening in early March, 1979, he was with the defendant in Bristol in the vicinity of Burlington Avenue shortly after 7 p.m. and had dropped him off to "do a couple of house jobs." He next saw the defendant around 10 p.m. that same evening at the defendant's father's house, where the defendant showed him a pillowcase full of assorted jewelry. The defendant said he had gotten the jewelry in the Burlington Avenue area.

Reva Paris testified that in March, 1979, the defendant came to her house and gave her a pillowcase containing some jewelry. She subsequently turned these items over to the Bristol police department. Mrs. Bossi identified these items as items which had been stolen from her house.

Diane Bromley testified that the defendant had given her a bracelet in March, 1979, which she likewise turned over to the Bristol police department. Mrs. Bossi identified this bracelet as another one of the items stolen from her house.

The defendant admitted that he had given these items to Reva Paris and Diane Bromley, but testified that he himself had received them from Joseph Gerulis. Officer Barbara Kenney of the Bristol

police department testified that some of the other items which had been stolen from the Bossi residence were recovered in the home of Joseph Gerulis on March 29, 1979.

# I

Joseph Gerulis testified as a witness for the state. Upon cross-examination the following occurred:

"Cross-Examination by Mr. Klein:

"Q. The first question I want to ask you is, is your name pronounced Gerulis?

"A. No, it isn't. It's Gerulis.

"Q. Now, Mr. Gerulis, what do you do for a living?

"A. I am an assistant machinist by trade.

"Q. Do you work there today?

"A. No, I am in jail at the present time.

"Q. Now, you said you lived at 60 Mount Pleasant Street in Bristol?

"A. Yes.

"Q. And that's not entirely true at the present time, is it?  I mean you don't live there in Bristol right now?

"A. Well, I am in jail right now.  I don't live in Bristol now.

"Q. And you live where?

"A. Right now?

"Q. Yes.

"A. In Litchfield, Litchfield Correctional Center.

"Q. That's the Litchfield Correctional Center?

"A. Yes.

"Q. And you were brought from there today to testify here in this case? Is that correct?

"A. Yes.

"Q. Do you know how many, and just approximate, if you don't know, how many felony charges you currently have pending against you in this court?

"Mr. Schatz: Objection. Now, Mr. Klein is an experienced criminal attorney, and Mr. Klein is well aware of our rulings of evidence, and Mr. Klein is aware — if I may finish —

"Mr. Klein: I want to finish.

"Mr. Schatz: I want to argue this point, because Mr. Klein is well aware that impeachment is limited to convictions, and I think this is a cheap shot, and I object to it, and I ask that the jury be instructed to disregard it, if your Honor please.

"The Court: Is there anything you want to say, Mr. Klein?

"Mr. Klein: Yes, your Honor. I think it goes to motive, to falsify—I could rephrase it.

"The Court: Mr. Klein, there's no need to rephrase it. The objection is sustained. You surprise me at having asked the question. The jury is instructed to please strike from your mind any such reference to any felony being lodged against this man.

"Mr. Klein: All right."

Although the defendant took no exception to the court's ruling, because the court's action might reasonably have been understood to preclude further comment by counsel and because it implicates the defendant's sixth amendment right of confrontation we consider the issue under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959). The sixth amendment to the constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured to defendants in both state and federal prosecutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The primary interest secured by confrontation is the right to cross-examination. *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). An important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Cross-examination with regard to motive permits the exploration of felony charges even when the witness has not yet been convicted.

Although the court should have permitted the particular question, a review of the entire cross-examination demonstrates that the opportunity to impeach the witness sufficiently comported with the constitutional standards to satisfy the confrontation clause. *United States* v. *Andrew,* 666 F.2d 915, 925 (5th Cir. 1982); *United States* v. *Vasilios,* 598 F.2d 387, 390–91 (5th Cir.), cert. denied, 444 U.S. 967, 100 S. Ct. 456, 62 L. Ed. 2d 380 (1979), reh. denied, 444 U.S. 1049, 100 S. Ct. 742, 62 L. Ed. 2d 737 (1980); see *State* v. *Tropiano,* 158 Conn. 412, 426–28, 262 A.2d 147 (1969). Additional cross-examination revealed that Gerulis had driven the defendant and another man to the area of the crime; that he returned every fifteen to twenty minutes over the period of an hour to pick up the others; that when they did not return, he went to the defendant's residence to see what they got; and that Gerulis expected and received gas money for his efforts. Cross-examination further indicated that some of the stolen property was found in Gerulis' apartment during the execution of a search warrant; that Gerulis was currently incarcerated; and that he was not only a codefendant in the case on trial, but that he also had other criminal cases pending. The defendant also pursued a line of inquiry implying that Gerulis hoped to receive lighter treatment because of his testimony in this case, and questioning the veracity of his testimony. The court's ruling, when examined in the light of the impeaching pictorial display of Gerulis which the defendant was permitted to place before the jury, does not rise to the level of interference with the defendant's right of confrontation. *United States* v. *Andrew,* supra; *United States* v. *Vasilios,* supra.

## II

To prove larceny in the first degree the state must show that the value of the property stolen exceeds $2000. General Statutes § 53a-122. In order to establish the value of the property in question the state offered the testimony of Max Rabin, a registered jeweler of the American Gem Society. The defendant did not and does not question Rabin's qualifications. His objection is that because the valuation was not based on personal observation of the property in question it amounted to sheer speculation. We disagree.

Rabin made his evaluation from a description of the items contained in an inventory prepared by Peter and Marjorie Bossi, owners of the jewelry in question. At the trial both of the Bossis testified and described in some detail the more valuable items stolen. The description matched the description contained in the inventory. The inventory itself was admitted, without objection, into evidence as a full exhibit.

In order for an expert to render an opinion he must be qualified to do so. There must be a factual basis for the opinion. McCormick, Evidence (2d Ed.) § 13. The basis may be derived from personal observation or from other evidence in the case. Where the expert is asked to evaluate personal property, customarily he bases his evaluation on a personal examination of the property to be evaluated. If, however, the items of personal property are not available, indirect evidence of value is permissible. *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 422–23, 446 A.2d 799

(1982). "From the very nature of the circumstances, the amount of the loss could not be proven with exactitude and all that is required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." Id., 423. That test was satisfied in this case.

"That it is competent for an expert witness to base his opinion, as to value, upon a description of the article in controversy, seems too clear to admit of doubt; otherwise, owing to lack of knowledge or capacity in those who have seen it, it would often be impossible to establish its value. An opinion based upon such a description merely may not be so satisfactory as in the case where the witness bases his opinion upon his own observation; yet the admissibility of it rests upon the same basis as an opinion given in answer to any hypothetical question incorporating a statement of facts." *Sullivan* v. *Gibson,* 39 Mont. 274, 279–80, 102 P. 320 (1909); *Glennon* v. *Travelers Indemnity Co.,* 91 A.2d 210, 211 (D.C. Mun. App. 1952). Whether the descriptions contained in the inventory are true representations of the jewelry in question or only simulacrums are matters for the trier.

There is no error.

In this opinion the other judges concurred.