STATE OF CONNECTICUT *v.* JOSE ORTIZ
(10394)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and COVELLO, Js.

Argued November 14—decision released December 31, 1985

*Carl D. Eisenman,* assistant public defender, with whom, on the brief, was *Margaret Hayman,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *John M. Massameno,* assistant state's attorney, *James R. Turcotte,* special deputy assistant state's attorney, and *Bernadette Conway,* legal intern, for the appellee (state).

DANNEHY, J. A jury found the defendant guilty of manslaughter in the first degree, in violation of General Statutes § 53a-55 (a) (3). He was sentenced to imprisonment for not less than ten nor more than twenty years. His posttrial motions for acquittal and a new trial were denied. The defendant claims on appeal that the trial court erred: (1) in precluding cross-examination of a state's witness concerning criminal charges pending against him at the time of trial; (2) in admitting testimony of an expert witness concerning an identification of the defendant by his tooth mark

preserved in an apple found at the scene of the crime; and (3) in admitting testimony of a witness whom the state failed to disclose in response to the defendant's request for discovery. We find error on the defendant's first claim. We will address briefly the second claim, but we do not consider the third because it cannot recur on retrial.

On the evening of May 16, 1978, Hartford police officers, responding to a report of a possible burglary, discovered the dead body of seventy-four year old Maria Joaquim on the floor of her apartment on Lawrence Street in Hartford. She was blindfolded, and her wrists and legs were bound with cord taken from lamps in her apartment. Her mouth was stuffed with cloth fastened tightly in place by a band tied across her lower face and mouth. The medical examiner testified at trial that the cloth in Joaquim's mouth had caused her death by suffocation.

The victim's apartment was in complete disarray, and appeared to have been ransacked. Bureau and desk drawers were removed and emptied and clothes were scattered about. The mattress was pulled from the bedframe, linoleum tile and floorboards were torn up, and sofa cushions were removed. Several pieces of apple found in the apartment and in the cellar were taken to Lester Luntz, a dentist and the state's expert witness in the field of forensic odontology. Luntz assembled the apple pieces and testified that they fit together "like a jigsaw puzzle." Luntz identified a human bite mark found preserved in the apple as that of the defendant. Additional facts will be discussed as we consider the various issues raised by the parties.

We first address the defendant's claim that the trial court improperly restricted his cross-examination of Carlos Carrasquillo, one of the state's principal witnesses against him. Carrasquillo testified at trial that

on the evening of May 16, 1978, while in a cafe on Park Street in Hartford, the defendant stated that he and a companion "tried to get some money out of this old lady down on Lawrence Street and that she started screaming. And they put something in her mouth. She started shaking. She was acting like she was going to have a heart attack." Carrasquillo further related that the defendant threatened him. According to that testimony, the defendant said that if Carrasquillo said anything, the defendant would "smash his face." The state concluded its direct examination by asking Carrasquillo if he had ever been convicted of a felony. The witness answered in the negative.

Midway through the defendant's cross-examination of Carrasquillo, the jury was excused. Outside the presence of the jury Carrasquillo insisted that he had never been convicted of a felony. On further inquiry, however, he acknowledged that criminal charges were pending against him. The state objected to this line of questioning. The defendant pressed the inquiry, vigorously contending that he had a right, under the sixth amendment to the United States constitution, to cross-examine the witness regarding the pending charges in order to demonstrate his bias, interest, or motive. The trial court sustained the objection and allowed an exception to the ruling.

The primary interest secured by the confrontation clause is the right to cross-examination. *State* v. *Milum,* 197 Conn. 602, 608, 500 A.2d 555 (1985). Our cases have consistently recognized the right of an accused, during cross-examination, to place before the jury the fact that criminal charges are pending against the state's witnesses. *State* v. *Lubesky,* 195 Conn. 475, 482, 488 A.2d 1239 (1985); *State* v. *George,* 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982); *State* v.

*Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Annunziato,* 174 Conn. 376, 380, 387 A.2d 566 (1978). "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination"; *Davis* v. *Alaska,* 415 U.S. 308, 316–17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); and it is "well settled law that '[t]he fact that the witness is a defendant in a criminal prosecution . . . creates an interest which affects his credibility.' " (Citations omitted.) *State* v. *Ferrara,* 176 Conn. 508, 512, 408 A.2d 265 (1979). For that reason we have held that cross-examination to show "motive, bias, interest and prejudice is a matter of right and may not be unduly restricted." *State* v. *Milum,* supra, 609; *State* v. *Lubesky,* supra, 482; *State* v. *Shindell,* 195 Conn. 128, 140, 486 A.2d 637 (1985).

The confrontation clause of the sixth amendment requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses. Thus, while as a general rule restrictions on the scope of cross-examination are within the sound discretion of the trial judge, " 'this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment.' " *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1984); *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980); *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959). We have adhered to this principle and found no error in the limitation of cross-examination into pending criminal charges where we were "satisfied, upon review of the entire cross-examination, that the opportunity to impeach the witness sufficiently comported with the constitutional standards embodied in the confrontation clause." *State* v. *Lubesky,* supra; *State* v. *George,* supra, 365–66;

*State* v. *Wilson,* supra, 721; see also *State* v. *Denby,* 198 Conn. 23, 501 A.2d 1206 (1985); *State* v. *Asherman,* supra, 721; *State* v. *Gaynor,* supra, 509. In the present case, however, we need not address the threshold question under the sixth amendment "because the trial court did not allow any cross-examination into the witness' possible motive and interest." *State* v. *Milum,* supra.

The state, while conceding error, contends that overwhelming evidence of guilt renders the error harmless beyond a reasonable doubt. Despite language in *Davis* v. *Alaska,* supra, to the effect that denial of the right of effective cross-examination "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it"; id., 318; the state argues that it is the "duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States* v. *Hasting,* 461 U.S. 499, 509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). We have reviewed the state's evidence against the defendant and note that most of it was circumstantial. We further observe that much of this evidence was controverted by the defendant, who testified in his own defense. While we are convinced that the state's evidence, even without the testimony of Carrasquillo, would have been sufficient to sustain a finding of guilt beyond a reasonable doubt, the "harmlessness of an error depends upon its impact on the trier and the result, not upon whether the particular evidence involved was legally essential to support the finding." *State* v. *Bruno,* 197 Conn. 326, 336, 497 A.2d 758 (1985) (*Shea, J.,* concurring).

In this case, Carrasquillo was a key witness for the prosecution. His testimony was the only evidence which directly implicated the defendant. We are not satisfied beyond a reasonable doubt that without Carrasquillo's testimony the jury would have returned a verdict of

guilty. Nor can we rule out the possibility that had Carrasquillo testified to the pending charges, he could have been completely discredited. We believe this case falls squarely within our holding in *State* v. *Ouellette,* 190 Conn. 84, 103, 459 A.2d 1005 (1983), where we stated that the "prevention, throughout the trial of a criminal case, of *all* inquiry in fields where cross-examination is appropriate, and particularly in circumstances where the excluded questions have a bearing on credibility and on the commission by the accused of the acts relied upon for conviction, passes the proper limits of discretion and is prejudicial error." (Emphasis in original.) Accord *State* v. *Milum,* supra; *State* v. *Corley,* supra; *State* v. *Annunziato,* supra; *State* v. *Luzzi,* supra. Accordingly, we reject the state's claim that the trial court's erroneous restriction of cross-examination was harmless beyond a reasonable doubt.

We next address the defendant's claim that the trial court erred in admitting the testimony of Lester Luntz, a dentist and the state's expert witness in the field of forensic odontology. Luntz testified that he examined and made impressions of the human bite marks preserved in the partially eaten apple found at the scene of the crime. On the basis of his comparison of these impressions with the denentiture of the defendant, Luntz was allowed to give his expert opinion that the bite marks were made by the defendant's teeth. The defendant duly objected to the admission of this evidence, and took an exception to the court's ruling.

The defendant's contention with respect to this claim of error is quite narrow. He does not question the qualifications of Luntz as an expert in the field of dental identification. Nor does the defendant contend that dental identification generally is not accepted as a proper subject of expert testimony. The only question which we must address is the defendant's "simple assertion [in his brief] that *bite mark* identification (as

opposed to *dental* identification) had not reached the stage at which opinion testimony could properly be admitted into evidence." The defendant further recognizes in his brief that, in view of our holding in *State* v. *Asherman,* supra, 715, "it would appear that bite mark testimony would be admissible. The defense has no quarrel with that. The claim is that such testimony should be factual and quantitative, i.e., measurements, pictorial representation, etc., and not *opinion* testimony with conclusion as to the perpetrator of the bite mark." Finally, the defendant notes in his brief that "[a]ll other jurisdictions confronting this issue have admitted such testimony. See annot., 77 A.L.R.3d 1122 (1977 and 1983 Sup.). However, it is the contention of the defendant that these cases were wrongly decided . . . ."

In *State* v. *Asherman,* supra, decided several months after the defendant filed his main brief in this case, we implicitly recognized bite mark identification as a proper subject of expert testimony. We do not retreat from that position. As the defendant candidly acknowledges, every jurisdiction to consider the matter has admitted expert opinion testimony on bite mark comparison. See *Bundy* v. *State,* 455 So. 2d 330, 349 (Fla. 1984); *People* v. *Williams,* 128 Ill. App. 3d 384, 397, 470 N.E.2d 1140 (1984); *People* v. *Middleton,* 54 N.Y.2d 42, 49, 429 N.E.2d 100, 444 N.Y.S.2d 581 (1981), and cases cited therein; annot., 77 A.L.R.3d 1122–23 (1977 and Sup. 1985). "If a duly qualified expert testifies that in his opinion the test or device is reliable, but his opinion is not shared by the scientific community, either because it is novel and experimental or because they disagree with its bases, the court still has discretion to admit the evidence because competent proof is not rendered inadmissible merely by the fact that others take issue with it." Tait & LaPlante, Connecticut Evidence (1976) § 8.12, pp. 148–49. "General scientific acceptance is a proper condition for taking judicial

notice of scientific facts, but it is not a suitable criterion for the admissibility of scientific evidence." McCormick, Evidence (3d Ed. 1984) § 203, p. 608.

It has long been our rule that "the qualification of an expert witness is within the discretion of the trial court and its decision will not be disturbed on appeal unless that discretion is abused . . . ." *State* v. *Wilson,* 180 Conn. 481, 489–90, 429 A.2d 931 (1980); *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973); *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370 (1915). While the defendant in his brief cites numerous scholarly authorities who have criticized the reliability of bite mark identification; e.g., comment, "The Admissibility of Bite Mark Evidence," 51 S. Cal. L. Rev. 309 (1978); we believe that the number of jurisdictions admitting this type of evidence attests to its reliability. As with expert testimony generally, the defendant may, on cross-examination, challenge the qualifications of the expert witness, and the factual and logical bases of his opinions and conclusions. *State* v. *Asherman,* supra, 716–18. Moreover, the defendant may, as in this case, present evidence challenging the reliability of the field of expertise. Here, the trial court allowed the defendant to present two expert dental witnesses who testified that the defendant's teeth did not make the bite marks found in the apple. We hold, in accordance with our rules governing expert testimony generally, that the defendant's claim of unreliability is properly addressed to the weight of bite mark opinion testimony and not to its admissibility. *State* v. *Asherman,* supra, 718; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964); *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 682, 54 A.2d 270 (1947). The trial court did not abuse its discretion in allowing Luntz to give his opinion that the bite marks preserved in the apple were those of the defendant.

The defendant's final claim is that the trial court erred by admitting the testimony of a state's witness whose name was not disclosed in response to the defendant's pretrial motion for discovery. Practice Book § 747. In light of our disposition of the case, requiring reversal on other grounds, we do not address this claim because it cannot possibly recur on retrial.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.