[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR NEW TRIAL
On May 26, 2000 the defendant in the above-captioned matter was found guilty of the charges of Robbery in the First Degree and Kidnaping in the First Degree after a jury trial.
On June 2, 2000 the defendant filed a Motion For New Trial. The basis of the motion is prosecutorial misconduct as evidenced by inappropriate and prohibited comments by the State's Attorney during his closing argument.
As part of its argument in opposition, the State points out that the motion was not filed within five days of the verdict as required by Section 42-52 of the Practice Book. The court can and in this case does excuse the late filing and will decide the issue on the merits.
The court has had the benefit of written memoranda from both sides and oral argument thereon. The court has also considered the applicable statutes, practice rules and case law in arriving at the findings herein. CT Page 9655
The rules state that the court shall grant the motion:
(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or;
(2) for any other error which the defendant can establish was materially injurious to him or her. Section 42-52, Practice Book.
A motion for new trial is addressed to the sound discretion of the trial court and will be granted only on substantial grounds. State v. Asherman, 193 Conn. 695, 734 (1984).
The type of error that will justify a new trial is one which reasonable could have affected the trial result or outcome of the proceedings. State v. Ortiz, 198 Conn. 220, 225-26 (1985); or one which resulted in an injustice or deprived the defendant of a fair trial. State v. Fernandez198 Conn. 1, 17 (1985).
The defendant cited approximately eleven different statements made by the State's Attorney in his closing argument which he considers to be so improper as to warrant a new trial. The fall into three separate categories or types:
1. Appeals to the emotions of the jury;
2. Injection of facts not in evidence; and
3. Expressions of personal opinion on the credibility of witness and the guilt of the defendant.
1. Appeals to the emotions of the jury.
The portions of the State's Attorney's closing argument cited by the defendant as illustrative of comments designed to appeal to the emotions of the jury all deal with the State's Attorney's speculation as to what was going through the victim's head as he was forced to lay on a bathroom floor next to a toilet at gun point by the perpetrator. While they not have been the expressed sentiment of the witness in every respect, they were not so "poisonous" to the minds of the jurors that the accused could be said to have been deprived of a fair trial. See State v. Couture,194 Conn. 530, 564 (1984).
In addition, comments had the objective of stressing the fact that such a moment would stay with the victim and help him focus on and remember the unmasked face of the perpetrator. CT Page 9656
2. Injection of facts not in evidence.
The main example of this ground cited by the defendant was the State's Attorney's comment that "two eyewitnesses saw the defendant in the area committing the crime." When defense counsel raise his objection, the inaccurate comment was immediately rectified by the State's Attorney when he more specifically recounted that two eyewitnesses saw the accused in the area of the crime and one of them witnessed the crime. That correction was immediate and accurate and was consistent with the evidence at trial. The court finds that it is highly unlikely that the jury was confused by the misstatement in that the observations of each of the two witnesses was the subject of extensive testimony and cross examination at trial.
A second allegation of injection of facts not in evidence involved a comment by the State's Attorney which the defendant maintains created a prejudice against the defendant not arising from the evidence. "I'm not going to downplay that and say oh come on just convict the guy."
On its face, its apparent that it was a comment the State's Attorney distanced himself from in that he was not going to say that. More importantly, when read in context with his entire remarks, it is apparent that the thing he was not downplaying was his prior remark that "this is a significant decision you are going to make. And I realize that it's a lot for a prosecutor to stand up here and ask you to do that but that's how our system works." While somewhat convoluted, his comments were not prejudicial to the defendant in any way sufficient to warrant a new trial.
3. Expressions of personal opinion on the credibility of witnesses and on the guilt of the defendant.
Several of the State's Attorney's comments on the credibility of defense witnesses were definitely expressions of his person opinion as to which of the witnesses he thought the jury should believe. However, in making his comments, with one exception mentioned below, he based his comparison and the reason for his extortion as to who to believe on a sufficiently accurate recitation of the evidence as he recalled it. The jury had been carefully instructed that they were to rely on their recollection of the evidence and testimony and that the comments of counsel were not evidence. It cannot be said that these comments denied the defendant a fair trial.
There were, however, comments made about the defendant's alibi witness, Christine Anglin, which arguably could have merit if not made CT Page 9657 clear to the jury. Ms. Anglin had conceded on cross examination that she had used crack cocaine. She also testified that she had been caught stealing. She also testified that she had "kicked drugs".
The State's Attorney thereafter described her a ""self-confessed crack addicted person, who although she testified that she had kicked her habit", recently she had been caught stealing from a grocery store." By his remarks, the State's Attorney came extremely close to inferring that the testimony as to her stealing evidenced an on-going crack addiction which is inconsistent with her unrefuted testimony that she had kicked her drug habit. He stopped short of that and correctly pointed out that the behavior he was citing was conceded under oath by the witness.
Further on in his closing argument the State's Attorney volunteered his personal opinion of the credibility of that same witness when he told the jury that it is not reasonable to take her (Anglin's) word over the word of two eyewitnesses." While his personal opinion was inappropriate, his comments did not instruct the jury that they would be wrong or in error if they chose to believe her over some other witness. They do not, in the court's opinion, constitute error which "resulted
3. Expressions of personal opinion on the credibility of witnesses and on the guilt of the defendant.
Several of the State's Attorney's comments on the credibility of defense witnesses were definitely expressions of his person opinion as to which of the witnesses he thought the jury should believe. However, in making his comments, with one exception mentioned below, he based his comparison and the reason for his extortion as to who to believe on a sufficiently accurate recitation of the evidence as he recalled it. The jury had been carefully instructed that they were to rely on their recollection of the evidence and testimony and that the comments of counsel were not evidence. It cannot be said that those comments denied the defendant a fair trial.
There were, however, comments made about the defendant's alibi witness, Christine Anglin, which arguably could have merit if not made clear to the jury. Ms. Anglin had conceded on cross examination that she had used crack cocaine. She also testified that she had been caught stealing. She also testified that she had "kicked drugs".
The State's Attorney thereafter described her a "self-confessed crack addicted person" "who although she testified that she had kicked her habit", recently she had been caught stealing from a grocery store." By his remarks, the State's Attorney came extremely close to inferring that the testimony as to her stealing evidenced an on-going crack addiction CT Page 9658 which is inconsistent with her unrefuted testimony that she had kicked her drug habit. He stopped short of that and correctly pointed out that the behavior he was citing was conceded under oath by the witness.
Further on in his closing argument the State's Attorney volunteered his personal opinion of the credibility of that same witness when he told the jury that it is not reasonable to take her (Anglin's) word over the word of two eyewitnesses." While his personal opinion was inappropriate, his comments did not instruct the jury that they would be wrong or in error if they chose to believe her over some other witness. They do not, in the court's opinion, constitute error which "resulted in injustice or deprived the defendant of a fair trial" as found in State vs. Fernandez, supra.
There were several instances of the State's Attorney's provided his personal opinion as to why the jury should accept the testimony of the victim and Dwayne Emile, the "two eyewitnesses" referred to several times in his closing argument. After review of the portions of the transcript the court notes where he suggested to the jury that the victim had "nothing to gain in this case" that he was kind of nice and friendly" and that he and Emile are "disinterested" witnesses. These are undeniably instances of personal opinion by the State's Attorney, but they are comments about witnesses whom the jury had the opportunity to observe and size up. They were not bound by those comments and they were reminded that it was their recollection and opinion that mattered. The comments of the State's Attorney while improper did not rise to the level of egregiousness that permits a finding that the defendant was denied a fair trial.
For the foregoing reasons, the motion for new trial is hereby denied.