******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ADAM BENEDICT
(SC 19034)

Rogers, C. J., and Palmer, Zarella, McDonald and Vertefeuille, Js.

*Argued January 15—officially released September 9, 2014*

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *David S. Shepak*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellant (state).

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher* and *William J. Ward*, for the appellee (defendant).

*Opinion*

McDONALD, J. Following our grant of certification, the state appeals from the judgment of the Appellate Court reversing the trial court's judgment of conviction of the defendant, Adam Benedict, of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (6). The state claims that the Appellate Court improperly concluded that the trial court violated the defendant's right to confrontation under the sixth and fourteenth amendments to the United States constitution by precluding him from questioning the complainant[1] on recross-examination about the conditions of her participation in a pretrial diversionary program (diversionary program) on a felony charge pending against her in an unrelated case. The defendant sought to elicit such evidence to imply that the complainant had a motive to testify favorably for the state in the present case. We conclude that, in the absence of an offer of proof regarding the nature of those conditions, the defendant failed to establish a sufficient nexus between the testimony that he sought to elicit and the complainant's motive to testify favorably for the state to implicate his confrontation rights. Therefore, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following facts that the jury reasonably could have found in support of the charge on which the defendant was convicted. "At all relevant times, the complainant was a seventeen year old senior at Litchfield High School, and the defendant was a substitute teacher and athletic coach at that school. The defendant first contacted the complainant outside of school in January or February, 2007. A week or two later, the defendant called the complainant while she was visiting a friend's residence and offered to pick her up. The complainant agreed. When the defendant and his friend arrived at the . . . residence [where the complainant was visiting], the defendant appeared to be intoxicated. After the defendant's friend drove the defendant and the complainant to the defendant's residence, the friend departed. Upon entering the defendant's residence, the complainant followed him into his bedroom, where he kissed her, took off her shirt, kissed her chest and sucked on her breasts. Then the defendant, still clothed, rubbed his genital region against the complainant's leg and requested that she allow him to ejaculate on her breasts or face. Thereafter, the defendant exposed his penis and requested that the complainant perform fellatio on him. When the complainant refused, the defendant returned his penis to his pants and continued rubbing his genital region against her leg until he ejaculated. After changing his clothing, the defendant lay down on the bed with the complainant, kissed her, squeezed her breasts and fell asleep. The complainant remained at the defendant's residence until the following morning.

"After her graduation from high school, in June or July, 2007, the complainant, accompanied by her boyfriend and another female complainant, went to the state police barracks in Litchfield to file a complaint against the defendant. On the basis of that complaint, the defendant was later arrested and charged with three counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (6). Two counts related to separate alleged incidents involving sexual contact between the defendant and the complainant, and one count related to a third alleged incident involving sexual contact between the defendant and the other female complainant." (Footnotes omitted.) *State* v. *Benedict*, 136 Conn. App. 36, 38–40, 43 A.3d 772 (2012).

The record reveals the following additional undisputed facts and procedural history. At trial, the defendant sought to undermine the credibility of the complainant by suggesting that she had been prompted by her boyfriend to lie in her initial report to the police after her boyfriend and the defendant had exchanged hostile text messages and that she had a motive to lie in her trial testimony. With respect to the latter objective, defense counsel posed the following question to the complainant on cross-examination: "You have a felony pending in this court, do you not?" The prosecutor objected, and the court excused the jury. In the colloquy that followed, defense counsel argued that the complainant had a pending felony charge for possession of heroin, which carried a substantial sentence. He further argued that this situation created an interest that affected her credibility as a witness, because "she may be using [the current] proceeding as leverage to get some sort of deal in that proceeding [against her]." The prosecutor informed the court that the complainant had not been convicted of the felony, but rather was participating in a diversionary program pursuant to which the charge would be dismissed. The prosecutor further noted that the complainant's file had been sealed, and that her arrest had occurred subsequent to her complaint in the defendant's case. The prosecutor therefore argued that neither the nature of the felony nor the details of her diversionary program were appropriate lines of inquiry by the defendant. Upon inquiry by the court as to the intended scope of questioning, defense counsel indicated that, after prompting the complainant to admit that she had a pending felony charge, he simply would ask if the pendency of the charge affected her present testimony or otherwise made her want to testify favorably for the state.

After the prosecutor argued that the prejudicial effect of such proposed testimony outweighed any probative value it would yield, the trial court directed defense counsel to make an offer of proof. In that offer, he elicited testimony from the complainant that, between one and two years before the defendant's trial com-

menced,[2] she had been arrested and charged with possession of narcotics in violation of General Statutes § 21a-279 (a), an unclassified felony for which she could have received a possible seven year sentence and a $50,000 fine.[3] She further testified that she had not informed the prosecutor in her criminal case that she was a witness in the defendant's case and that she did not believe that the prosecutor knew of this fact. The prosecutor then proceeded to elicit from the complainant that she had been arrested for the aforementioned charge after she had made her complaint against the defendant, that she had not been promised anything in exchange for her testimony in the defendant's case, and that, prior to her testimony in the defendant's case, she had been granted entrance into a diversionary program in which her pending felony charge was due to be dismissed within a couple of months. Thereafter, the court sustained the prosecutor's objection that the prejudicial effect of the proffered evidence was greater than its probative value. The jury was recalled to the courtroom, and the complainant finished testifying without an inquiry on this matter.

After the complainant was excused from the stand and the court went on to address other matters outside the presence of the jury, the prosecutor moved for the court to reconsider its ruling and reopen the complainant's testimony in light of *State* v. *Wilson*, 188 Conn. 715, 453 A.2d 765 (1982), a case that had come to his attention. The prosecutor asserted that this authority suggested that the defendant should be permitted to cross-examine the complainant about her pending felony charge in order to comport with the constitutional standards embodied in the confrontation clause. When the court inquired of the parties as to the parameters of such additional questioning if it were to be permitted, defense counsel twice responded that he wanted to ask the complainant "just one question," namely, "do you have a felony pending in this court?" The prosecutor stated that he would like to question the complainant briefly on redirect examination on that limited subject. The court then granted the prosecutor's motion to reopen the complainant's testimony for the purpose of inquiring into her pending felony charge and told defense counsel: "I'm going to give you the ability to ask your questions as you see fit."

After the jury was brought back into the courtroom, the court recalled the complainant to the stand, whereupon defense counsel prompted her to admit that she did indeed have a felony charge pending against her in the trial court. Following that admission, defense counsel stated: "I have nothing further."

On redirect examination, the prosecutor probed further as to the timing of the complainant's arrest on that charge and the disposition of her case. The complainant testified that she had been arrested after she had made

the complaint against the defendant and then stated: "[A]s long as I do everything I'm supposed to, [the case will] get dismissed." When the prosecutor asked what the conditions of the diversionary program required of her, the complainant answered: "Go to probation and community service." She then testified that she had not discussed the defendant's case with the prosecutor in her criminal case, nor had she discussed her criminal case with the prosecutor in the defendant's case. Moreover, she denied that the state had promised her anything in exchange for her testimony in the defendant's case. Lastly, the complainant answered "[n]o" when the prosecutor asked her if she believed that the disposition of the criminal case against her had anything to do with her testimony in the present case.

On recross-examination, defense counsel attempted to ask the complainant the following question that gives rise to the present appeal: "Are there any other conditions of your probation?" When the prosecutor objected on the ground of relevance, defense counsel responded that the prosecutor had "opened the door" to this inquiry by eliciting testimony from the complainant about only certain conditions of her program, and then attempting to minimize the impact of her pending charge on her credibility. In considering the prosecutor's objection, the trial court stated, in the presence of the jury: "[I]f a condition of her probation was to testify favorably for the state, I would allow it, but if it's not going to involve that, I'm not going to allow it. . . . [I]t's not relevant to the issue as to whether or not she was promised anything for her testimony today, so I'm not going to allow it." Defense counsel then asked to rephrase the question, which the court allowed, and thereafter he asked: "Are you required to do anything else, without stating exactly what it is you're required to do?" The complainant answered "[y]es," and defense counsel ended his recross-examination.

The jury subsequently found the defendant guilty of one count of sexual assault in the fourth degree against the complainant and not guilty of the two other counts of that offense and the trial court rendered judgment in accordance with the verdict.

The defendant appealed to the Appellate Court, raising four claims, including that the trial court had deprived him of his right to confrontation when it restricted his recross-examination of the complainant by sustaining the prosecutor's objection to defense counsel's question regarding the conditions of her diversionary program. *State* v. *Benedict*, supra, 136 Conn. App. 38. The Appellate Court determined that the defendant's confrontation claim was dispositive of the appeal. Id., 38 n.2. The Appellate Court concluded that the prosecutor had suggested on redirect examination that the state no longer could influence the final disposition of the complainant's pending felony charge because

the two conditions of her diversionary program to which she testified—meeting with her probation officer and performing community service—did not include an agreement to testify favorably for the state. Id., 48. Therefore, it reasoned that defense counsel's inquiry into the other conditions of her diversionary program was essential to understanding the role that the state might still have had in influencing the dismissal of her felony charge upon satisfying those conditions and thus the potential impact of the pending charge on her credibility. Id., 48–49. The court reasoned that, if the complainant's satisfaction of the diversionary program's conditions could be established by purely objective measures, then the prosecutor's potential to undermine her chances for dismissal would have been minimal at most. Id., 49. Alternatively, if the additional conditions required a subjective appraisal of her efforts, then the prosecutor's role in influencing the court's determination as to her success in the diversionary program would have remained substantial, giving the state the continuing power to affect her fate in her criminal case. Id. Therefore, the Appellate Court concluded that the trial court had "denied fair and reasonable inquiry into an important subject already broached by the prosecutor, and thus categorically discounted, before the jury, the potential impact of the complainant's pending charge on her interest in testifying favorably for the state." Id., 50. Acknowledging that the trial court eventually had permitted the defendant to ask whether the complainant had other undisclosed conditions of her probation, the Appellate Court concluded that such an admission "was rendered worthless by the [trial] court's anticipatory declaration [in the jury's presence] that any such conditions would be irrelevant to her credibility if they did not involve an express agreement by her to testify in favor of the state." Id. The Appellate Court further concluded that the state had failed to meet its burden of showing that the error was harmless beyond a reasonable doubt. Id., 51.

Although its resolution of this claim required reversal of the defendant's conviction, the Appellate Court also considered one of the remaining issues raised in the defendant's appeal that it deemed likely to arise on remand.[4] The court agreed with the defendant that the trial court improperly permitted the state to question the defendant and his character witnesses about his social media website login identification, "smoothcriminal1977," in violation of the prohibition on the use of bad character evidence under § 4-4 of the Connecticut Code of Evidence. Id., 54, 56–57; see also id., 54 n.14 (noting discrepancies regarding login identification and website). Accordingly, the Appellate Court reversed the trial court's judgment and remanded the case for a new trial. Id., 57.

Thereafter, we granted the state's petition for certification to appeal limited to the following issues: (1)

"Did the Appellate Court properly determine that the defendant's right to confrontation was violated at trial?"; and (2) "If so, did the Appellate Court properly determine that the defendant was harmed?" *State* v. *Benedict*, 307 Conn. 911, 53 A.3d 998 (2012). We answer the first question in the negative and therefore reverse the judgment of the Appellate Court.

I

The state contends that the Appellate Court improperly reviewed the defendant's constitutional claim and that, in any event, the defendant did not present a cognizable confrontation clause claim under the facts of the case. We disagree with the state that the defendant's constitutional claim was not adequately preserved for appellate review, but agree with the state that the defendant has not asserted a meritorious constitutional claim on this record.

A

As a preliminary matter, we address the state's contention that the Appellate Court improperly reviewed the defendant's confrontation claim, over the state's objection. The state contends that the issue was not preserved for appellate review because the defendant articulated an evidentiary, not constitutional, basis for questioning the complainant about the additional conditions of the diversionary program. The state further contends that the defendant is not entitled to *Golding*[5] review of his unpreserved constitutional claim because he provided no offer of proof as to the additional conditions of the complainant's diversionary program, thus failing to provide an adequate record for review as required under the first prong of *Golding*. Although we conclude that some of the state's concerns impact the defendant's ability to prevail on the merits of his claim, we conclude that the defendant adequately preserved his confrontation claim.

It is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal. Practice Book § 60-5. As this court repeatedly has observed, "the essence of the preservation requirement is that fair notice be given to the trial court of the party's view of the governing law . . . ." (Emphasis omitted.) *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004). "A secondary purpose of the preservation requirement is to prevent the possibility that an appellee would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the [appellant] would . . . claim that such a course of conduct involved rulings which were erroneous and prejudicial to him." (Internal quotation marks omitted.) *State* v. *Favoccia*, 119 Conn. App. 1, 14–15, 986 A.2d 1081 (2010), aff'd, 306 Conn. 770, 51 A.3d 1002 (2012). "Assigning error to a court's . . . rulings on the basis of objections never raised at trial unfairly subjects the

court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Devalda*, 306 Conn. 494, 517, 50 A.3d 882 (2012).

In the present case, the defendant initially argued before the trial court that he should be permitted to examine the complainant regarding the charge pending against her under "well settled" law that "the fact that a witness is a defendant in a criminal case creates an interest . . . which affects [her] credibility." In support of this proposition, the defendant cited several cases which, although not expressly identified by the defendant as such, analyze this concern under the rubric of the defendant's rights under the confrontation clause.[6] When the prosecutor subsequently asked the court to reconsider its ruling in light of another case, he expressly made this connection by noting the right of a defendant to cross-examine a witness to elicit facts tending to show motive, interest, bias or prejudice in order "[t]o comport with the constitutional standards embodied in the confrontation clause . . . ." *State* v. *Wilson*, supra, 188 Conn. 720. Therefore, it cannot reasonably be argued that either the trial court or the prosecutor failed to grasp the potential constitutional significance of the line of questioning that the defendant sought to pursue.

In light of the fact that the defendant's constitutional claim centers on the limitation imposed on him during recross-examination, however, the state points to the defendant's subsequent argument that he had the right to inquire into the details of the complainant's diversionary program because the prosecutor had "opened the door" as proof of the evidentiary nature of his objection. Although such a ground, in isolation, would be construed as evidentiary and thus inadequate to preserve a constitutional objection; see *State* v. *Stenner*, 281 Conn. 742, 755, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007); *State* v. *Paulino*, 223 Conn. 461, 467, 613 A.2d 720 (1992); the defendant sought to question the complainant on the same subject matter—the complainant's incentive to testify favorably for the state due to her pending felony charge—for which a constitutional basis previously had been established. Therefore, the defendant did not need to renew his constitutional objection to preserve it. See *State* v. *Favoccia*, supra, 119 Conn. App. 16 (holding defendant preserved claim despite failure to expressly predicate subsequent objections on credibility basis earlier advanced because he had previously alerted court to precise question of law pertaining thereto); *State* v. *Guckian*, 27 Conn. App. 225, 239 n.7, 605 A.2d 874 (1992) (holding state preserved claim despite failure to object to specific testimony because "record clearly shows that the state repeatedly alerted the trial court to the issue it now presses on appeal"), aff'd, 226 Conn. 191, 627 A.2d 407 (1993); *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 279–80, 587 A.2d 1056 (1991) (holding

defendant preserved claim despite failure to object to specific testimony in light of "trial court's previously expressed sentiment about the issue"). Moreover, to the extent that the trial court sustained the state's objection on the ground of relevance, it would be of no avail for the defendant to renew his argument that this line of questioning was of constitutional significance. See *State* v. *Mastropetre*, 175 Conn. 512, 521, 400 A.2d 276 (1978) ("The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process. *Chambers* v. *Mississippi*, [410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]. Such interests are implicit in a trial court's accepted right, indeed, duty, to exclude irrelevant evidence; see *State* v. *Reed*, 174 Conn. 287, 299–300, 386 A.2d 243 [1978]; or evidence which, if admitted, would have a greater prejudicial than probative effect. See, e.g., *State* v. *Moynahan*, 164 Conn. 560, 597, 325 A.2d 199 [1973]." [Internal quotation marks omitted.]). Accordingly, the defendant has not subjected either the trial court or the state to ambush by raising on appeal the issue of whether his right to confrontation was violated on recross-examination.

In light of our conclusion that the defendant preserved his constitutional claim, we need not consider the state's alternative argument regarding whether the defendant has provided us with an inadequate record for purposes of review of an unpreserved claim under *Golding*. Nonetheless, the concerns that the state has articulated bear on whether the defendant established a sufficient nexus between the testimony he sought to elicit and the complainant's motive to testify favorably for the state to implicate his confrontation rights. We therefore turn next to that issue.

B

The state contends that, in the absence of an offer of proof from which the trial court could have determined whether the additional conditions of the complainant's diversionary program were relevant to her motive to testify favorably for the state, the Appellate Court improperly determined that the defendant had presented an adequate basis to weigh the constitutional significance of those conditions against any privilege the complainant had in her sealed record. The state further argues that, on the record presented, the defendant has not presented a cognizable confrontation clause claim because: (1) he was not deprived of an opportunity to probe into the potential toward bias that the pending charge and diversionary program may have had on the complainant; (2) he was permitted to fully explore other reasons for the complainant's bias and motive to fabricate; and (3) limits on recross-examination do not violate the confrontation clause if the opportunity to explore bias and motive is afforded on cross-examination. The defendant responds that the Appel-

late Court correctly determined that no offer of proof was required because the mere pendency of a criminal charge against a witness has the potential to influence her to testify in favor of the state, and the statutory scheme that governs the complainant's diversionary program enumerates conditions reflecting their relevance to such potential influence. The defendant also contends that, although he was given the opportunity to cross-examine the complainant, that opportunity was not a meaningful one as required by the sixth amendment because the trial court allowed the prosecutor to negate the effect of his cross-examination on redirect examination but did not permit him on recross-examination to correct the incomplete and misleading impression created by the testimony elicited by the state. He further contends that, because the testimony elicited by the state on redirect examination was new material, he had a constitutional right to inquire further into the conditions of the complainant's diversionary program.

We conclude that the Appellate Court improperly determined that the defendant had demonstrated that the additional conditions of the complainant's diversionary program were sufficiently relevant to implicate his right to confrontation. In light of this evidentiary gap, we conclude that the defendant has not established the basis for a valid confrontation claim.

"[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 791, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010). "[I]t is well settled law that [t]he fact that the witness is a defendant in a criminal prosecution . . . creates an interest which affects his [or her] credibility." (Internal quotation marks omitted.) *State* v. *Ortiz*, 198 Conn. 220, 224, 502 A.2d 400 (1985). "The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Erickson*, 297 Conn. 164, 189, 997 A.2d 480 (2010).

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) *State* v. *Moore,* supra, 293 Conn. 791. "We have emphasized in numerous decisions

. . . that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . [For example, a] defendant may elicit only relevant evidence through cross-examination." (Citations omitted.) *State* v. *Valentine*, 255 Conn. 61, 71, 762 A.2d 1278 (2000). "The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross examination. Every reasonable presumption should be made in favor of the correctness of the [trial] court's ruling . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995).

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Relevance may be established in one of three ways. First, the proffering party can make an offer of proof. . . . Second, the record can itself be adequate to establish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996).

We agree with the Appellate Court that, in light of the complainant's testimony indicating that she did not have an agreement with the state in exchange for her testimony, the ultimate measure of her potential bias was whether she believed that, by providing favorable testimony, she could garner favor with the state and gain its assistance with the ultimate disposition of her pending criminal charge. To provide the requisite sufficient nexus between the conditions of her program and her credibility; see id., 589–90; therefore, it was incumbent upon the defendant to demonstrate that the complainant believed or had reason to believe that the office of the state's attorney directly or indirectly could influence whether she was deemed to have satisfied the unidentified conditions.

In the present case, the defendant elicited from the complainant that she had a pending felony charge, and the prosecutor elicited the fact that this charge would be dismissed upon her satisfaction of the conditions of her diversionary program. Those facts, however, did not establish an independent basis in the record or the basis of a good faith belief to conclude that the unspecified conditions of the diversionary program provided a means by which the office of the state's attorney actually could, or the complainant would have believed that it could, influence the disposition of that charge.

Upon the prosecutor's objection as to the relevancy of a question pertaining to the other conditions of her diversionary program, the defendant made no offer of proof as to what evidence he expected to elicit from the complainant; rather, he simply asked to rephrase his question to elicit that she did in fact have to satisfy other unidentified conditions. The defendant also made no argument before the trial court that any particular condition would have been statutorily required, as he appears to suggest in his brief to this court. Furthermore, an examination of the statutory scheme that the parties agree likely governed the complainant's diversionary program reveals no such mandate. See General Statutes §§ 17a-691 through 17a-701 (providing for treatment and suspension of prosecution for certain persons who were drug or alcohol dependent at time of commission of crime). General Statutes § 17a-696 (c) provides that "[t]he court or the Court Support Services Division *may* require"; (emphasis added); inter alia, that a person comply with any of the conditions specified in General Statutes § 53a-30 (a) and (b). Section 53a-30 (a) in turn sets forth seventeen possible conditions, the last of which is to "satisfy any other conditions reasonably related to the [person's] rehabilitation." General Statutes § 53a-30 (a) (17). The defendant has failed to point to a single condition that, on its face, supports his theory that the office of the state's attorney could derail the dismissal that the complainant was anticipating.[7] Thus, the defendant "never removed from the realm of counsel's speculation . . . by the introduction of competent evidence or an offer of proof"; (internal quotation marks omitted) *State* v. *Gould*, 241 Conn. 1, 18, 695 A.2d 1022 (1997); the existence of a belief by the complainant or actual conditions that would have been probative of the complainant's possible motive to testify favorably for the state.

Contrary to the view of the Appellate Court and the defendant, *State* v. *Santiago*, 224 Conn. 325, 330–31 n.6, 332, 618 A.2d 32 (1992), does not support the proposition that no offer of proof was needed to establish the relevance of the testimony sought in the present case. As this court previously explained in *State* v. *Barnes*, supra, 232 Conn. 748, when we rejected the same proposition, "[i]n light of our review of the record in *Santiago*, we concluded that the defendant's line of inquiry was clearly supported by the evidence and relevant to the witness' bias, despite the fact that the defendant had made no offer of proof. . . . Thus, in *Santiago*, the record independently was adequate to establish the relevance of [the] evidence sought to be elicited." (Citation omitted.) Indeed, in *Barnes*, the court cited case law that previously established this proposition; id., 748–49; and rejected the propriety of allowing a defendant to attempt "to use cross-examination as a tool to investigate purely speculative sources of witness bias, rather than as a tool to discredit testimony on the basis of [an

offer of proof, the record itself, or] a preexisting good faith belief that bias existed." Id., 749.

We note that the necessity of proof of relevancy had additional significance in the present case in light of the fact that the state indicated that the complainant's record had been sealed. Although it is clear that the defendant's constitutional right to confront the complainant trumps the state's interest in protecting the confidentiality of sealed records;[8] see *Davis* v. *Alaska*, 415 U.S. 308, 320, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); the relevancy of the proffered evidence must be established before such confidentiality can be breached. Accordingly, "[t]he record in the present case does not reveal how [the witness] would have answered the question or what details [she] would have provided in answering the question. It is therefore impossible to determine whether those details were so important to the defendant's case that their preclusion . . . impaired his constitutional rights." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 214, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).[9]

## II

In light of our conclusion that the Appellate Court improperly determined that the trial court violated the defendant's right to confrontation, the defendant is entitled to consideration of the other claims that he had raised on appeal that the Appellate Court did not address; see footnote 4 of this opinion; as well as consideration of the evidentiary claim that the Appellate Court only addressed on the merits. The defendant contends, however, that, because the state did not challenge the Appellate Court's determination that the trial court improperly admitted bad character evidence regarding the defendant's social media login name, it has "waived [the] issue [of whether this impropriety deprived the defendant of a fair trial] and cannot challenge the Appellate Court's determination that [the defendant] is entitled to a new trial on this issue." We disagree.

The Appellate Court never considered the issue of whether the defendant proved that the evidentiary error was harmful. The Appellate Court's consideration of this question was unnecessary in light of its resolution of the defendant's confrontation claim, which independently required reversal of the judgment and a remand for a new trial. In the absence of the necessary predicate for a new trial on the basis of the evidentiary error—a determination of harm—the Appellate Court will be required to consider this issue as part of its consideration of the defendant's remaining claims upon remand. See *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254, 9 A.3d 364 (2010) ("[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will

result in a new trial only if the ruling was both wrong *and* harmful." [Citation omitted; emphasis added; internal quotation marks omitted.]).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims on appeal in accordance with this opinion.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the complainant or others through whom the complainant's identity may be ascertained. See General Statutes § 54-86e.

[2] This appeal arises from the defendant's second trial on these charges. His first trial ended in a mistrial. The complainant was arrested prior to the defendant's first trial.

[3] The complainant also stated that she had been charged with four counts relating to the possession of drug paraphernalia, a misdemeanor offense.

[4] The Appellate Court did not reach the defendant's claims that the trial court violated his state and federal constitutional rights to a fair trial by an impartial jury when it denied: (1) his challenge for cause with respect to a venireperson; and (2) his request for a continuance to permit him to raise a challenge to the jury array. *State* v. *Benedict*, supra, 136 Conn. App. 38 n.2.

[5] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) (setting forth four-pronged test to prevail on unpreserved constitutional claim).

[6] The defendant cited to *State* v. *Ortiz*, 198 Conn. 220, 502 A.2d 400 (1985), *State* v. *Lubesky*, 195 Conn. 475, 488 A.2d 1239 (1985), *State* v. *Shipman*, 195 Conn. 160, 486 A.2d 1130 (1985), and *State* v. *George*, 194 Conn. 361, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985).

[7] The defendant contends in his brief to this court that the impact of the conditions on the complainant's credibility is not speculative because, under the provision addressing termination of a suspended prosecution due to a violation of conditions; General Statutes § 17a-698 (a); "a governmental entity could still derail the dismissal which [the complainant] was anticipating . . . ." There remains a fundamental problem with this contention. The defendant still would have to establish some basis to believe that, due to the nature of the conditions of the complainant's diversionary program, not only could this unidentified governmental actor influence the determination as to whether the complainant had satisfied the conditions of her diversionary program, but also that, at the very least, the complainant believed that this actor was subject to the influence or oversight of the office of the state's attorney. For the same reasons previously set forth, it would be pure speculation under this record to reach such a conclusion.

We also note that there is nothing in the statutory scheme that expressly provides an opportunity for the office of the state's attorney to influence whether a diversionary program participant has satisfied any condition imposed. Under the statutory scheme, the trial court makes the determination to suspend prosecution of an individual and order his or her participation in a diversionary program. See General Statutes § 17a-696 (b). Upon such an order, the Court Support Services Division (support services), a division of the Judicial Branch, assumes custody over persons participating in such programs; see General Statutes § 17a-692 (a); the trial court or support services orders the participants to comply with certain conditions; see General Statutes § 17a-696 (c); and the trial court determines whether to modify or terminate the suspension of prosecution of a participant upon notification by support services of a violation of a condition of the diversionary program. See General Statutes § 17a-698 (a) and (b).

[8] The basis upon which the complainant's record was sealed is not revealed by the record.

[9] In light of our conclusion, we do not reach the parties' remaining claims addressing whether the trial court provided the defendant with a meaningful opportunity to confront the complainant on recross-examination because of the complainant's testimony on redirect examination. As a result of the defendant's failure to meet his burden of establishing the relevancy of his inquiry into the conditions of the complainant's diversionary program, he failed to prove that the complainant's testimony on redirect examination implicated his confrontation rights.